JAMES HICKEY v. THE MICHIGAN CENTRAL RAILROAD COMPANY.

*Nuisance—Overhanging trees—Abatement—Notice.*

1. Branches of trees standing upon land adjoining the right of way of a railroad company, which overhang the right of way to such an extent as to obscure the view of its engineers when their duties require them to lean out of their cabs for the purpose of maintaining a lookout, are a nuisance, which may be abated by the company by trimming the branches off up to the line of the division fence, without notice to the land-owner, who has knowledge of the fact that the company claims they are a nuisance, and desires their removal.

2. The fact that the road-master of the railroad company offers the land-owner $10 to remove the trees, which he refuses to accept, will not confer upon him the right to exact further notice before the removal of the overhanging branches by the railroad company.

3. The following general propositions are summarized from the opinion of Mr. Justice MONTGOMERY:

    *a*—"It is a nuisance if the branches of one's trees extend over the premises of another, and the latter may abate it by sawing them off;" citing Cooley, Torts, 567.

    *b*—"Trees whose branches extend over the land of another are not nuisances, except to the extent to which the branches overhang the adjoining land. To that extent they are nuisances,

and the person over whose land they extend may cut them off, or have his action for damages, and an abatement of the nuisance, against the owner or occupant of the land on which they grow, but he may not cut down the tree; neither can he cut the branches thereof, beyond the extent to which they overhang his soil;" citing Wood, Nuis. § 112; *Grandona v. Lovdal,* 70 Cal. 161.

*c*—It is stated, without limitation, in Wood on Nuisances (section 834), that "any person injured by a nuisance, to the extent that he may maintain an action at law therefor, may remove so much of the nuisance as is necessary to secure to himself immunity from damage therefrom; but he must not be guilty of any excess therein, for, as to all excess of abatement, he will be a trespasser."

*d*—This general rule is, however, subject to exception; and it is stated in Wade on Notice (section 480*h*), that "where the act complained of is one of positive wrong or willful negligence, or the security of life or property is endangered, and the danger seems imminent, the party threatened with the injury may abate the same without giving notice to the wrong-doer, or waiting for him to remove it. Where, however, the nuisance is merely permitted to exist, and the case is not very urgent, notice, and an opportunity to remove it, is essential, before the complaining party would be justified in forcibly abating the same."

Error to Saginaw. (Gage, J.) Argued June 28, 1893. Decided July 25, 1893.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

*Hanchett, Stark & Hanchett,* for appellant.

*Tarsney & Wicker,* for plaintiff, contended:

1. Trees in the highway are the property of the adjacent landowner, and if they encroach upon the highway, and must be removed, he has a right, and must be afforded reasonable opportunity, to take them as living trees, and transplant them elsewhere. The order of removal should be given to him, and he should be afforded a reasonable time to comply with it before the commissioner should act further; citing *Clark v. Dasso,* 34 Mich. 86; *Ice Co. v. The Steamer Excelsior,* 44 Id. 229, 233.

2. If the overhanging branches of plaintiff's trees could be considered a nuisance, still the right summarily to abate upon the

part of the defendant can be no greater, but, we take it, must be very much less, than though there were a partial obstruction on a public highway; citing *Clark v. Ice Co.*, 24 Mich. 508, 511.

MONTGOMERY, J.   The plaintiff was the owner of land adjoining the right of way of defendant, and had planted trees upon the land within his inclosure, and very near to the fence which is claimed by him to mark the line.   It is claimed by the defendant that as a matter of fact the railroad company's right of way included the lands upon which the trees were grown.   It would appear, however, that the plaintiff had fenced in all the lands within his present inclosure many years ago, and it is probable that he has acquired title by adverse possession. However this may be, it appears to us that the case was tried below, on the part of counsel for both parties, with the understanding that the title to the soil upon which the trees were growing was in the plaintiff.   We shall treat the case, therefore, as though the title to the land, up to the line of the fence, was in the plaintiff.

The branches of the trees in question overhung the right of way of defendant to such an extent that at times they brushed against the face of the engineer, when his duties required him to lean out of his cab for the purpose of maintaining a lookout.   On the 24th of September, 1891, the employés of defendant trimmed the branches of the trees up to the line of the fence.   No claim is made that the trees were damaged beyond this, or more than was necessary to remove the overhanging branches.

The questions presented are whether these overhanging branches constituted a nuisance; whether, as a nuisance, the defendant had a right to cause them to be removed; and whether, before removing them, it was necessary to serve notice upon the plaintiff, that he might have the opportunity to remove them; and, if so, whether the notice

which he had of the defendant's desire that they be removed was sufficient.

The plaintiff's testimony was as follows:

" These trees had grown so that their limbs and branches extended over the fence into the railroad company's right of way 10 or 15 feet beyond the fence. In the spring of 1891, Mr. Sullivan, the road-master of the Michigan Central Railroad Company, came to me, and said that the trees and their overhanging branches were a nuisance to the railroad company for the reason that the engineers could not see ahead along the right of way on the curve there at my place. We talked awhile about the matter, and he finally offered me $10 for permission to cut down or remove the trees. I refused this offer. He said then, 'You had better take it, or some day I will get an order to cut down those trees, and then you won't get anything.' He also said that he would see the superintendent, and find out if the company would give me any more than $10 for the trees. Neither Sullivan nor any one else representing the railroad company ever saw me about the trees after that, and I never received any other offer for my trees."

The circuit judge instructed the jury as follows:

" It is the view of the court that it was the duty of the railroad company, having operated that road with these branches there for so long a time, to have notified Mr. Hickey that they were an obstruction, to a certain extent, to the line of their road; that he must remove the branches, or remove his trees, or that they did not desire them any longer to grow upon their land, which they had a right to do, without any reference to the obstruction of the view of the track; and that he must cut the branches, or remove the trees, or they would do so. Then, if he refused, they might, of their own motion, remove the branches from the line of the right of way. I base this opinion largely upon the case cited by counsel for the defendant, of *Earl of Lonsdale v. Nelson,* 2 Barn. & C. 302."

We think this instruction was erroneous. It is stated, without limitation, in Wood on Nuisances (section 834):

" Any person injured by a nuisance, to the extent that he may maintain an action at law therefor, may remove so

much of the nuisance as is necessary to secure to himself immunity from damage therefrom; but he must not be guilty of any excess therein, for, as to all excess of abatement, he will be a trespasser."

At section 838 it is said:

" The party judges at his peril, and if he errs in judgment he is answerable for all the damages that ensue; and if, in the exercise of the right, a breach of the peace is involved, he is answerable, by indictment, for the result."

This general rule is, however, subject to exception. It is stated in Wade on Notice (section 480*h*):

" Where the act complained of is one of positive wrong or willful negligence, or the security of life or property is endangered, and the danger seems imminent, the party threatened with the injury may abate the same without giving notice to the wrong-doer, or waiting for him to remove it. Where, however, the nuisance is merely permitted to exist, and the case is not very urgent, notice, and an opportunity to remove it, is essential, before the complaining party would be justified in forcibly abating the same."

The case of *Earl of Lonsdale v. Nelson* is understood to hold that nuisances created by act of omission may not be abated except after notice; but in the opinion in that case, by Justice Best, it was stated as follows:

" There is no decided case which sanctions the abatement, by an individual, of nuisances from omission, except that of cutting the branches of trees which overhang a public road, or the private property of the person who cuts them. The permitting these branches to extend so far beyond the soil of the owner of the trees is a most unequivocal act of negligence, which distinguishes this case from most of the other cases that have occurred."

This case is referred to in *Jones v. Williams*, 11 Mees. & W. 181, in which case the court, laying down the rule that the alienee of land upon which a nuisance exists at the time of his purchase is not liable to an action without notice, said:

"We do not rely on the decision in *The Earl of Lonsdale v. Nelson* as establishing the necessity of notice in such a case, for there much more was claimed than a right to remove a nuisance, viz., a right to construct a work on the plaintiff's soil, which no authority warranted; but Lord Wynford's *dictum* is in favor of this objection, for he states that a notice is requisite in all cases of nuisance by omission, and the older authorities fully warrant that opinion, where the omission is the non-removal of a nuisance erected by another."

It is worthy of note that it was conceded in the briefs of the counsel in *Jones v. Williams* that the notice or request is unnecessary before abating the nuisance of overhanging branches, the reason being stated that any person may lawfully stand in the highway over which the trees hang, and there cut them.

In Cooley on Torts (page 567), it is stated:

"It is a nuisance if the branches of one's trees extend over the premises of another, and the latter may abate it by sawing them off."

In Wood on Nuisances (section 112), it is said:

"Trees whose branches extend over the land of another are not nuisances, except to the extent to which the branches overhang the adjoining land. To that extent they are nuisances, and the person over whose land they extend may cut them off, or have his action for damages, and an abatement of the nuisance, against the owner or occupant of the land on which they grow, but he may not cut down the tree; neither can he cut the branches thereof, beyond the extent to which they overhang his soil."

See, also, *Grandona v. Lovdal*, 70 Cal. 161 (11 Pac. Rep. 623.)

The purpose of notice, in such case, when required, it is evident, is to give to the owner the opportunity of himself abating the nuisance. It is undisputed, from the testimony in this case, that the plaintiff knew that the railroad company claimed that these trees were a nuisance, and desired their removal. The fact that it went so far as to offer

him $10 to do what he was legally bound to do did not, we think, confer upon him a right to exact further notice. He must be presumed to have known what his legal rights were. In the face of this, and with knowledge of the fact that the nuisance was objected to by the railroad company, he, in effect, said: "I refuse your offer of the gratuity of $10." We think he is not in a position to insist that he was entitled to further notice.

The judgment will be reversed, with costs, and a new trial ordered.

HOOKER, C. J., McGRATH and GRANT, JJ., concurred. LONG, J., did not sit.