**BROWN et al. v. UNITED STATES.**
Civ. No. 2413.

United States District Court
D. New Mexico.
May 28, 1954.

Rueckhaus & Watkins, Albuquerque, N. M., for plaintiffs.

Melvin L. Robins, Asst. U. S. Atty., Albuquerque, N. M., for defendant.

WALLACE, District Judge.

The plaintiffs, John E. Brown and Robert E. May, bring this action under the Tort Claims Act [1] to recover for personal injuries they received when the roof of a government building, by which roof they were being supported while painting, suddenly gave way.

The case was tried to the Court without a jury. The introduced evidence revealed the following facts:

(1) On August 9, 1951, the plaintiffs were working as painters for one J. A. Ross, a painting contractor, who had entered into a contract with the Department of the Air Force at Kirtland Air Force Base, New Mexico. On this particular day the plaintiffs work consisted of doing exterior building painting on the upper portion of an installation on this Base known as Building No. 371.

(2) While the plaintiffs were working on adjoining ladders located on the roof of Building No. 371, at a time when scaffolding ran between the two ladders, the roof, at the base of one of the ladders, collapsed, causing the plaintiffs to fall and suffer certain personal injuries.

(3) The roof of Building No. 371 was constructed of laminated jip lap covered by tar paper; the building was erected sometime in 1943 or 1944.

(4) Prior to the accident in question many persons had been on the roof of Building No. 371 since its construction; from all objective evidence, including this past history, it appeared, at the time the work in question was being done, that the roof was structurally capable of supporting workmen.

(5) At the time of the specific job in question, the United States Government had a safety engineer on duty at the Kirtland Air Force Base; this safety engineer had the duty to supervise safety measures to be taken at the Base and to advise visiting workmen (such as plaintiffs) of any latent defects known by said safety engineer or which should have been known by him in the exercise of reasonable care in the discharge of his supervisory duties in connection with the physical installations at the Base.

(6) The safety engineer was not guilty of negligence in the discharge of his duties; and, no duty owed the plaintiffs was breached.

(7) The agent or agents of the Government did not know of any defects insofar as the roof in question is concerned; and, had no information which

1. 28 U.S.C.A. § 1346(b).

constructively put it on notice that an accident might occur.

■ Although plaintiffs' proof was somewhat sketchy in connection with establishing that at the time of the instant fall the Government had in its employment a person charged with the specific responsibility of supervising the safety of persons on the Base, including invitees (such as plaintiffs) and of advising said invitees of latent dangers, the Court is satisfied that the safety engineer referred to at the time of trial was a government employee who had and assumed such a responsibility. However, the evidence clearly fails to demonstrate that the Government, or this safety engineer in particular, was in any way derelict in its or his duty in not discovering and warning the plaintiffs that the roof in question constituted a special hazard. There was no objective evidence which put any Government agents on notice that an accident like the instant one, might occur. The evidence established that over a period of years prior to this accident, many persons, including many workmen, had been on this roof and had received no injury.

■ Although there was some testimony that water marks were visible on a portion of the ceiling from inside the building, the argument that such put the Government on notice of danger is untenable. The evidence is inconclusive that there was any definite relation between the location of the water marks and the precise point on the roof which gave way or that as a matter of fact a leakage of water had weakened the roof at this particular point; in fact, it appears that the roof gave way, due to no special weakening, but solely due to the concentration of weight at the limited point the ladder rested on the roof. In addition, even if water leakage had weakened this laminated jip lap roof, the slight evidence of water stain testified to could not constructively put the Government on notice of latent danger and constitute negligence on behalf of the Government in not discovering such latent danger.

The case at bar is very similar to that of McCarthy v. Hiers where the Georgia Court in sustaining defendant's general demurrer to the petition, which petition sought to recover for injuries suffered by a painting contractor who had fallen through the defendant's roof while painting defendant's smokestack, said:[2]

"Where the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same. (Citing cases.) "[3]

■ In the instant case although the Government and its safety engineer in particular had a general duty to be on the lookout for physical conditions on and about the Base which might create a hazard, no special duty existed to carefully inspect the roof in question, prior to the time plaintiffs went thereupon, inasmuch as there was nothing which gave notice that such an inspection was advisable.[4]

---

2. 1950, 81 Ga.App. 365, 59 S.E.2d 22, 24.

3. Accord, Daddetto v. Barbiera, 1949, 4 N. J.Super. 479, 67 A.2d 691, wherein the Court held that the mere fact a beam under a platform leading from bakery on leased premises to sidewalk was rotten and gave way under weight of customer such did not constructively give notice to proprietor so as to charge him with liability for customer's injuries. Cf. Lanni v. Pennsylvania R. Co., 1952, 371 Pa. 106, 88 A.2d 887.

4. "A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if

The defendant is entitled to judgment. Counsel should submit a journal entry which conforms with this opinion within 15 days.

known to him, he should realize as involving an unreasonable risk to them * * *". Restatement (Torts) § 343.

Significantly, as remarked by the Court in the McCarthy case, footnote 2, supra, 59 S.E.2d at page 24, "* * * If it appeared safe to the plaintiff under these circumstances, it must have appeared safe to the defendants, despite the conclusion of the plaintiff that the existence of a defect could have been ascertained by the defendants by an inspection." It is only reasonable that if the visible condition of the roof here involved was such as to put a reasonably prudent person on notice that a close investigation and inspection should be made prior to walking and working thereon, the plaintiffs themselves would have been guilty of contributory negligence in ascending to the roof without first determining that the working condition was perfectly safe. In addition, there is a serious question but what due care required the plaintiffs to use temporary decking beneath their ladders.