Argued July 7, reversed September 9, petition for rehearing
denied October 18, 1966

# WRIGLESWORTH *v.* DOYLE

417 P. 2d 999

*Darrel L. Johnson,* Portland, argued the cause for appellant. With him on the briefs were Pendergrass, Spackman, Bullivant & Wright and Ronald E. Bailey, Portland.

*Gerald H. Robinson,* Portland, argued the cause for respondent. With him on the brief were Charles Paulson and Lent, York & Paulson, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The plaintiff, while working upon premises owned by the defendant, was injured when a ceiling upon which he was standing fell. Plaintiff recovered a verdict for damages and defendant appeals.

The defendant, a meat cutter by trade, in 1956 purchased the building in which the accident occurred. In 1963 he started some remodeling. He hired a carpenter and an electrician, Nelson, to do the work. The plaintiff was an electrician who worked for Nelson.

In one of the rooms the ceiling had been lowered from its original 15-foot height to about nine feet.

This had been done before defendant's ownership. This lowered ceiling was referred to in the testimony as a "false ceiling" and was to be removed in the remodeling.

Wriglesworth, the plaintiff, was ordered by his employer, Nelson, to cut some wires, tape them, and put them out of service. Some of these wires were hanging from electrical boxes in the original ceiling. Wriglesworth climbed onto the false ceiling. After he had been working there for about five minutes the false ceiling partially gave way, causing the plaintiff to fall.

The ceiling was constructed of 2 x 6 pieces of lumber, 16 feet long. These 2 x 6's were covered with a material described as "firtex," which was nailed to the lumber. At the place where the 2 x 6's joined the walls there were wooden "plates." It is not certain whether these plates were nailed or bolted onto the wall. The 2 x 6's were "toenailed" or "spiked" into the plate. The number or size of the nails used in "toenailing" or "spiking" is unknown.

Immediately after the plaintiff fell, three or four 2 x 6's were observed hanging down two to four feet. It is not known whether the plate came loose or whether the 2 x 6's broke loose from the plate. There was evidence by the defendant that none of the 2 x 6's were defective. The cause of the drop of the false ceiling is unknown.

While the plaintiff was working upon the false ceiling, the defendant, with the use of a "little" hammer, was removing the Firtex. At the time of plaintiff's fall, about two-thirds of the Firtex had been removed. The defendant testified that he was not aware that plaintiff or anyone else was standing on the false ceiling.

The defendant testified that he had never been on top of the false ceiling, had never tested it, and when he was removing the Firtex had not observed any defects.

There was evidence that the defendant and plaintiff's employer, Nelson, had ladders on the job.

The case was tried upon the theory that plaintiff was a business invitee when he entered onto defendant's premises. We concur that such theory is appropriate. *Dutton v. Donald M. Drake Co.*, 237 Or 419, 425, 391 P2d 761 (1964). An occupier of land is liable to an invitee if he "knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, * * *." 2 Restatement (Second), Torts § 343. Approved in *Lee v. Meier & Frank Co.*, 166 Or 600, 605, 114 P2d 136 (1941). This implies that "the possessor [land occupier] will take reasonable care to ascertain the actual condition of the premises." 2 Restatement (Second), Torts § 343, Comment *d*. However, the extent of the duty to inspect is dependent upon the circumstances. This is stated in Comment *e.* of 2 Restatement (Second), Torts § 343, as follows:

"In determining the extent of preparation which an invitee is entitled to expect to be made for his protection, the nature of the land and the purposes for which it is used are of great importance. One who enters a private residence even for purposes connected with the owner's business, is entitled to expect only such preparation as a reasonably prudent householder makes for the reception of such visitors. On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his

business visitors. So too, one who goes on business to the executive offices in a factory is entitled to expect that the possessor will exercise reasonable care to secure his visitor's safety. If, however, on some particular occasion, he is invited to go on business into the factory itself, he is not entitled to expect that special preparation will be made for his safety, but is entitled to expect only such safety as he would find in a properly conducted factory."

Plaintiff in his complaint charged the defendant with being negligent, "In requiring and permitting this plaintiff to stand and work upon the structure of said ceiling, when defendant knew, or in the exercise of reasonable care should have known, that the same was weak and would collapse with the weight of this plaintiff," and, "In failing to warn plaintiff that the structure would not safely bear his weight."

The defendant's motions for an involuntary nonsuit and to withdraw each specification of negligence from the jury were denied and such rulings are assigned as error.

■ Assuming, without deciding, that the drop of the false ceiling is some evidence that the ceiling was defective, we hold the defendant is not liable as a matter of law because, under the circumstances, a reasonably prudent building owner had no duty to make such an inspection as would have been necessary to discover the defective condition, if there were any.

■ There is no evidence that the defendant knew of any defect. There is no evidence that there was any manifestation which would have caused the defendant, as a reasonably prudent landowner, to suspect that there might be a defective condition and thus make a further inspection. As a general proposition, when a land occupier invites persons upon his land to make

alterations or repairs, such occupier has no duty to make an inspection to determine that the premises are safe unless a reasonably prudent land occupier would be aware of circumstances indicating that the premises might not be safe and, therefore, would make an inspection to determine the condition of the premises.

The above proposition was applied in *McCarthy v. Hiers,* 81 Ga App 365, 59 SE2d 22 (1950). There, the defendant landowners contracted with a painter to paint the smokestack at their factory. The plaintiff, an employee of the painter, walked across the roof to commence painting the stack, the roof fell in, and plaintiff fell and was injured. The court held the landowners were not liable as a matter of law. The court stated:

> "* * * Where the owner or occupier of premises is without actual knowledge of the existence of a defect, and there is nothing in the appearance or character of the premises or some instrumentality on the premises which would indicate the possible or probable existence of any defects, there is no reason to think an inspection necessary, and ordinary diligence would not require an inspection of the premises or an instrumentality upon the premises before permitting an invitee to make use of the same. * * *" 59 SE2d at 24.

The above language was quoted with approval in a federal tort claims case, *Brown v. United States,* 122 F Supp 166 (D N Mex 1954). The plaintiff was also a painter working upon the roof of a building at an air base and the roof collapsed injuring the plaintiff. The court held that the United States was not liable. It stated:

> "In the instant case although the Government and its safety engineer in particular had a general duty to be on the lookout for physical conditions on

and about the Base which might create a hazard, no special duty existed to carefully inspect the roof in question, prior to the time plaintiffs went thereupon, inasmuch as there was nothing which gave notice that such an inspection was advisable." 122 F Supp at 168.

The court cited Restatement, Torts § 343, as a footnote to the above quotation.

Reversed.