584

506 P.2d 90

Joan D. CANTRELL, Plaintiff-Appellee
and Cross-Appellant,

v.

LAWYERS TITLE INSURANCE COMPANY
et al., Defendants-Appellants
and Cross-Appellees.

No. 9407.

Supreme Court of New Mexico.

Feb. 9, 1973.

Nordhaus, Moses & Dunn, Robert B. Stephenson, Albuquerque, for Lawyers Title Ins. Co.

Oliver Burton Cohen, Albuquerque, for Victor W. Westphall, and Jeanne V. Westphall.

Butler & Colberg, Albuquerque, for Joan D. Cantrell.

OPINION

OMAN, Justice.

Plaintiff purchased a tract of land from defendants, Victor W. Westphall and Jeanne V. Westphall, hereinafter referred to as Westphalls. Defendant, Lawyers Title Insurance Company, hereinafter referred to as Lawyers, insured the title to the land. The other defendants in one way or another were interested in the land or in the sale thereof, but are not involved in this appeal.

Plaintiff brought a declaratory judgment action. One of her contentions therein was that 1.9486 acres of United States Forest Service land was included within the tract as described, and that the fair market value of this Forest Service land was $10,000.00.

Plaintiff recovered judgment against Westphalls and Lawyers jointly and severally in the amount of $3,420.00, which the trial court found was the fair market value of 1.9 acres of Forest Service land included in the tract Westphalls agreed to sell and convey to plaintiff. Westphalls and Lawyers have appealed. We reverse.

Westphalls and Lawyers jointly rely upon eight separately stated points for reversal, and Lawyers relies upon seven additional points. We need and do consider but one point, which is:

"The findings of the trial court essential to sustain the conclusions of law that

defendants breached statutory covenants or that defendants failed to convey 1.9 acres that they agreed to convey, are not supported by any evidence."

The findings attacked under this point were in material part as follows:

(1) Westphalls agreed to convey to plaintiff a tract of land described by courses and distances situate in "Section 2, T. 11 N., R. 4 E., N.M.P.M., being a portion of Homestead Entry No. 275 and 276" and "containing 35.103 acres more or less," with two smaller described tracts excepted therefrom, "leaving a total acreage of 27.811 more or less net."

(2) The tract so described included 1.9 acres of Forest land owned by the United States Government, and the fair market value of the 1.9 acres was $3,420.00.

■■ Findings of fact, which are properly attacked, will not be sustained on appeal if unsupported by substantial evidence. Groff v. Stringer, 82 N.M. 180, 477 P.2d 814 (1970); Forrest Currell Lumber Company v. Thomas, 81 N.M. 161, 464 P.2d 891 (1970); Herrell v. Piner, 78 N.M. 664, 437 P.2d 125 (1968). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. State Farm Mutual Automobile Ins. Co. v. Gonzales, 83 N.M. 296, 491 P.2d 513 (1971); Marjon v. Quintana, 82 N.M. 496, 484 P.2d 338 (1971).

■ The question to be decided is whether there was substantial evidence to support the trial court's finding that 1.9 acres of United States Forest land lying immediately south of the south line of Homestead Entries Nos. 275 and 276 were included within the description of the land which Westphalls agreed to sell and plaintiff agreed to purchase. The finding of the trial court to this effect is clearly inconsistent with the recital in the description that the land to be conveyed by Westphalls to plaintiff is "a portion of Homestead Entry No. 275 and 276." Surveys show Entry 276 lies immediately east of 275 and their south line is common to the north line of the said 1.9 acre tract of United States Forest land. The S.W. corner of Entry 275 and the S.E. corner of Entry 276 were each clearly marked by a U.S.D.A. Forest Service Monument in place. On the line between these two corners so marked, there also was in place a U.S.D.A. Forest Service Monument marking the S.E. corner of Entry 275 and the S.W. corner of Entry 276. This line of monuments was referred to as the government line by a surveyor called as a witness by plaintiff. This surveyor's testimony is the only possible source of support for the trial court's finding that 1.9 acres of United States Forest land lying south of this government line was included within the description here in question.

The starting point of the courses and distances description with which we are here concerned was the S.E. corner of Entry 276. From this point of beginning the description proceeded in a clockwise direction. Plaintiff's surveyor testified he followed the description beginning at the monument marking the S.E. corner of Entry 276. From that point westward to the S.W. corner of Entry 275, the south line of the tract followed the government line within four or five feet. By following the courses and distances in their proper sequence from this S.W. corner of Entry 275, he found the line of the tract to be reasonably consistent with other boundaries. However, he found that the N.E. corner of the tract, by following these courses and distances in the description, lay near a fence line, which was some 45 feet west of the east line of Entry 276. From this point southward, the fence line and the east line of Entry 276 diverged, and the fence line crossed the south line of Entry 276 (also the government line) some 82.15 feet west of the S.E. corner of this Entry. The language of the description recites that the last course and distance leads to the point of beginning, to wit, the S.E. corner of Entry 276.

The surveyor found a misclosure at the S.E. corner of 36.5 feet from east to west and 93.5 feet from north to south. That

is, the surveyor found by following the last course and distance recited in the description that he crossed the south line of Homestead Entry No. 276 some 36.5 feet west of the S.E. corner of that Entry. This corner, as already stated, was recited in the description as being both the point of beginning and ending. By extending the last course of the description its full distance, the surveyor found it ended 93.5 feet south of the south line of Entry 276.

In order to effect a closure, this surveyor elected to disregard the recital in the description that the tract was a portion of Entries 275 and 276, to disregard the final course and distance entirely, and to disregard the recitals that the points of beginning and ending were the S.E. corner of Entry 276. He chose the fence line as the east line of the tract from the point where the north line of the tract, according to the description, crossed this fence line to a point 86.5 feet south of the south line of Entry 276 (also the government line). At this point the fence line intersected or cornered with another fence line which extended from there westward to the S.W. corner of Entry 275. It is this triangular tract lying between the government line on the north, the one fence line on the east and the other fence line on the south, which the trial court found to be included in the courses and distances description of the tract sold by Westphalls to plaintiff.

No part of the tract included within the description in question lies south of the government line, and, except for the last course and distance called for by the description, which, as stated above, ended some 93.5 feet south of this government line and almost 50 feet east of the fence intersection adopted by the surveyor as the S.E. corner of the tract (rather than the S. E. corner of Entry 276 as called for by the description), there was no intrusion by the description into the government land lying south of the government line. The two fence lines followed by the surveyor in his reconstruction of the survey description were not mentioned in the description, or at any other place in the instrument exe-

cuted by Westphalls and plaintiff to accomplish their sale and purchase agreement.

In her answer to the foregoing quoted point relied upon by defendants for reversal, plaintiff relied entirely upon the following testimony of the surveyor as support for the trial court's finding that the description included 1.9 acres of government land:

"Q. Mr. Sanchez, from the actual field survey that you made and from placing these monuments on the map and placing them in these boundaries and the examination of Exhibit A and B and from your calculations and from your experience can you render an opinion as to how much land is within the Forest boundary—can you render an opinion?

"A. Yes.

" * * * *

"Q. Please state that opinion.

"A. It is my opinion that 1.95 acres approximately lie between this fence [the fence extending eastward from the S.W. corner of Homestead Entry No. 275 to the intersection of this fence with the other fence some 86.5 feet south of the government line] and the south boundary of the government survey [the government line].

" * * * *

"THE COURT: Where is that 1.96 that you say is missing?

"A. The 1.96 acres is a portion of land lying between the south boundary of the government line as defined by the brass caps and the existing fence line.

" * * * *

"Q. Is it now your testimony that you have been able to determine that 1.-94 feet [sic] six acres of Forest land is included in those deed descriptions?

"A. 1.95 acres of land lies between the south boundary of the Forest Service [the government line] and the fence existing."

In spite of repeated references to the tract of approximately 1.9 acres, nowhere

is it stated, or reasonably suggested, that these 1.9 acres lying between the government line and the fence were actually within the description of the tract sold by Westphalls and purchased by plaintiff. There being no evidence to support the finding of the trial court to this effect, the judgment based thereon must be reversed.

The judgment is reversed and this cause remanded to the trial court with directions to enter judgment for defendants, Victor W. Westphall, Jeanne V. Westphall and Lawyers Title Insurance Company, also referred to as Lawyers Title Insurance Corporation.

It is so ordered.

STEPHENSON, and MONTOYA, JJ., concur.