561 P.2d 468

Jesse L. GETZ, Plaintiff-Appellee,

v.

EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Defendant-Appellant.

No. 10653.

Supreme Court of New Mexico.

March 11, 1977.

Rehearing Denied March 23, 1977.

Modrall, Sperling, Roehl, Harris & Sisk, Peter J. Adang, Judy A. Fry, Albuquerque, for defendant-appellant.

Klecan & Roach, Eugene E. Klecan, Albuquerque, for plaintiff-appellee.

## OPINION

OMAN, Chief Justice.

This suit was brought by plaintiff (Getz) against defendant (Equitable) to recover long-term disability benefits for claimed total disability commencing September 28, 1973. The claim was made pursuant to the disability income provisions of a group life insurance policy issued to Sandia Corporation (Sandia) by Equitable. The district court found the issues in favor of Getz and entered judgment accordingly. Equitable has appealed. We reverse.

Getz was employed as a mechanical engineer by Sandia from 1956 until September 1973, when his employment was terminated. He had been notified in February 1973 that he would be one of about 800 employees whose employment would be terminated by Sandia. He thereupon applied to Sandia for disability retirement. This was denied, but his employment was extended until September 28, 1973, in order that he might qualify for partial retirement benefits. On September 23, 1974, he filed this suit in the district court and the judgment in his favor was entered on September 18, 1975.

There is no question about Getz being covered by the policy of Equitable. The question is simply whether or not he is qualified for total disability benefits thereunder. The provision of the policy, under which he must qualify for these benefits, states:

"For the purpose of the Group Long Term Disability Income policy,

"(a) an Employee shall be considered totally disabled if he is wholly and continuously unable

"(i) during the first two years of any one period of disability, to perform any and every duty pertaining to his employment, and

"(ii) during the remainder of such period of disability, to engage in any occupation or perform any work for compensation or profit for which he is or may become reasonably fitted by education, training or experience."

In order for Getz to qualify for the benefits he seeks, the parties are agreed that he must have shown he was and will be wholly and continuously unable to perform the duties or work as provided in (a)(i) and (a)(ii), supra, during the periods of disability expressly set forth therein. The findings made by the district court, which have been challenged on this appeal and which we feel are pertinent to our decision, are:

"4. That while the Plaintiff was employed by Sandia Corporation and covered by the long-term disability policy, the Plaintiff became totally disabled within the meaning of the policy due to a coronary condition of arteriosclerosis resulting in a myocardial infarction. The coronary condition of ill being is permanent.

"5. That the plaintiff was required to ingest certain drugs, in particular valium and nitroglycerine to try to control the heart condition and resulting discomfort. The permanent heart condition, resulting discomfort, stress of work, and the side effects of the medication have made the Plaintiff wholly unable to do every task of his former employment and unable to be again employed.

"6. That during the first two years of the period of his disability, Jesse Getz was unable to perform any and every duty pertaining to his employment and during the remaining period of disability he is and will be unable to engage in any occupation or perform any work for compensation or profit for which he is or may become reasonably fitted by education, training, or experience.

"* * *.

"8. That the Plaintiff, Jesse Getz, is totally disabled as defined in the policy and New Mexico cases and is unable to be employed without hazarding his life and health."

The evidence was that on or about October 1, 1970, Getz suffered a coronary thrombosis or myocardial infarction, and that he does have arteriosclerosis. A myocardial infarction causes some heart muscle damage, and, upon healing, leaves some scar tissue in the heart muscle. He was hospitalized on October 1, 1970, and remained in the hospital for about three weeks. After his discharge from the hospital he remained at home until December 7, 1970. He was largely resting and recuperating, but was permitted to engage in limited physical activity. On December 7, 1970, he returned to his work, but he was limited to four hours per day. In February 1971, he was returned to the performance of the full duties of his employment. In addition, he was on a program of physical exercise, including jogging. By the middle of 1971 he was jogging a mile or more, four or five days a week.

Valium is a sedative and antidepressant. Its purpose is to relieve anxiety. Getz took this sedative about three or four times a week after he returned to work. Nitroglycerine is a medication taken to relieve a temporary coronary insufficiency. He took this only occasionally as needed to relieve chest pains or discomfort coincident with angina, which is a temporary insufficiency of the full blood flow to some part of the heart muscle. Angina, or temporary coronary insufficiency, may be brought on by physical activity or by emotional or mental stress.

In its first point relied upon for reversal, Equitable contends that the district court erred in its interpretation of "total disability." This contention is predicated very largely upon oral statements made by the district court at the close of the presentation of the evidence by the parties. However, it clearly appears from its finding of fact No. 6, supra, that the district court interpreted total disability in accordance with the above-quoted policy provision. We have often held that an oral opinion, or oral statements, do not constitute a "decision," within the meaning of N.M.R.Civ.P. 52(B)(a)(1) [§ 21–1–1(52)(B)(a)(1), N.M.S.A.

1953 (Repl. Vol. 4, 1970)], and error may not be predicated thereon. *Specter v. Specter,* 85 N.M. 112, 509 P.2d 879 (1973); *Stone v. Stone,* 79 N.M. 351, 443 P.2d 741 (1968); *Fox v. Doak,* 78 N.M. 743, 438 P.2d 153 (1968); *Pack v. Read,* 77 N.M. 76, 419 P.2d 453 (1966).

■ As its second point relied upon for reversal, Equitable asserts that the district court erred in finding that during the first two years of Getz' claimed disability he was unable to perform any and every duty pertaining to his employment. We must concede that the evidence on this issue, as it appears in the transcript on appeal, is not free of conflicts, is far from conclusive, and would clearly support a contrary finding. However, we are of the opinion that it does support the finding when viewed as we must view it on appeal. It is not our function to weigh the evidence or its credibility, and we will not substitute our judgment for that of the trial court as to the facts established by the evidence, so long as the findings are supported by substantial evidence. *Lujan v. Merhege,* 86 N.M. 26, 519 P.2d 122 (1974); *Cantrell v. Lawyers Title Insurance Company,* 84 N.M. 584, 506 P.2d 90 (1973); *Tapia v. Panhandle Steel Erectors Company,* 78 N.M. 86, 428 P.2d 625 (1967).

■ For its third point relied upon for reversal, Equitable claims that there is no substantial evidence to support the other essential element of disability, to wit, that Getz is wholly and continuously unable to engage in any occupation or perform any work for compensation or profit for which he is or may become reasonably fitted by education, training or experience. We agree with Equitable.

In support of his position that he is wholly and continuously disabled to the extent required by this provision of the policy, Getz relies primarily upon his claim that all jobs for which he is fitted or may become reasonably fitted involve stress, and that after his retirement from Sandia he mailed to different employers approximately 100 job applications and did not secure employment.

The fact that there is stress in any job, or even in living, and the fact that he received no offer of a job in response to his applications, is no evidence of substance that he is wholly and continuously disabled from performing the duties of *any* occupation or performing *any* work for compensation or profit for which he *is* or *may become* reasonably fitted by education, training or experience. He jogs for about a mile four or five times a week, he gardens, he fishes and he boats, and there is no evidence that he is unable to perform any of the ordinary activities of a normally sedentary life, or perform the duties of many types of employment for which he is or may become fitted.

The physicians who had treated and examined him, and who testified at trial, classified him as Class I or Class II under the functional classification and either Class A or Class B under the therapeutic classification of the American Heart Association Classifications for heart patients. These classifications are:

"Class I. Patients with cardiac disease but without resulting limitations of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea, or anginal pain.

"Class II. Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain.

"Class A. Patients with cardiac disease whose physical activity need not be restricted in any way.

"Class B. Patients with cardiac disease whose ordinary physical activity need not be restricted, but who should be advised against severe or competitive efforts."

Both physicians who testified on behalf of Getz stated there were certain types of employment which he could perform. His treating physician named drafting and technical writing as two forms of employment in which he could engage. The other

doctor made the general statement that Getz could perform light and sedentary types of work. Work as a mechanical engineer was repeatedly referred to by witnesses as being sedentary. There is evidence that Getz' duties in engineering design did involve some stress, perhaps more than at least some other employments in the field of mechanical engineering. His employment also required occasional lifting of heavy equipment for which he would seek assistance, since his doctor advised he should not lift heavy objects. However, because his particular duties caused him some discomfort and distress three or four times a week and involved occasional physical activity which he could not perform alone, it does not follow that he is wholly and continuously disabled from performing the duties of any occupation or performing any work for compensation or profit for which he is or may become reasonably fitted by education, training or experience. There was undisputed testimony from a vocational analyst concerning many types of employment which Getz could do, and his treating physician testified he would be better off psychologically if he did work.

Although it is not proper for us to disagree with a finding supported by substantial evidence, we can and must determine whether the evidence presented substantially supports a finding which has been properly attacked. *Tyner v. DiPaolo,* 76 N.M. 483, 416 P.2d 150 (1966). Findings not supported by substantial evidence, and which have been properly attacked, cannot be sustained on appeal, and a judgment dependent thereon must be reversed. *Cantrell v. Lawyers Title Insurance Company,* supra; *Forrest Currell Lumber Company v. Thomas,* 81 N.M. 161, 464 P.2d 891 (1970); *Herrell v. Piner,* 78 N.M. 664, 437 P.2d 125 (1968).

We have read the transcript on appeal in this case and are convinced that there is no substantial evidence to support the finding of the district court that Getz "is and will be unable to engage in any occupation or perform any work for compensation or profit for which he is or may become rea-sonably fitted by education, training or experience." Since this finding is essential to the judgment entered in favor of Getz, that judgment cannot stand.

The final point relied upon by Equitable relates to claimed errors in the computation of disability benefits. This point is of no significance and need not be considered by us, since the judgment is being reversed for the reason above stated.

The judgment of the district court is reversed, and this cause is remanded to that court with directions to enter judgment for Equitable.

IT IS SO ORDERED.

McMANUS and PAYNE, JJ., concur.