703 P.2d 177

**George ABBINETT, et ux.,
Plaintiffs-Appellees,**

v.

**Osborne W. FOX, et al.,
Defendant-Appellant.**

No. 7806.

Court of Appeals of New Mexico.

Feb. 12, 1985.

Certiorari Quashed July 9, 1985.

Martin E. Threet, Threet & King, Albuquerque, for defendant-appellant.

Narciso Garcia, Toulouse, Toulouse & Garcia, Albuquerque, for plaintiffs-appellees.

## OPINION

DONNELLY, Chief Judge.

Defendant, Osborne Fox, appeals from a judgment awarded in favor of plaintiffs George and Betty Abbinett, authorizing plaintiffs to destroy encroaching tree roots originating from the defendant's property onto the plaintiffs' property and awarding compensatory damages. Two issues are raised on appeal: (1) whether the trial court properly imposed liability for damages caused by encroaching tree roots; and (2) whether there was sufficient evidence to support the award of damages. We affirm.

### FACTS

Plaintiffs and defendant formerly owned adjoining residences on Mossman Place in Albuquerque. Plaintiffs brought suit against the defendant alleging that during the time that defendant owned the property, roots from a large cottonwood tree on defendant's land encroached onto plaintiffs' land and damaged a patio slab, cracked the sides of a swimming pool, broke a block wall and a portion of the foundation of the plaintiffs' home, and clogged a sprinkler system on the plaintiffs' property. Plaintiffs sought a mandatory injunction against defendant requiring him to prevent future damages to the plaintiffs' property from the encroaching tree roots from trees on the defendant's land, and also sought compensation for damages to the plaintiffs' property.

After a bench trial, the trial court entered a judgment against the defendant in the amount of $2,500, denied injunctive relief, and entered an order authorizing the plaintiffs to utilize self-help to destroy or block the roots of the defendant's cottonwood trees from encroaching on their land in order to prevent further property damage.

### I. LIABILITY FOR ENCROACHMENT

Defendant contends that the trial court erred in imposing damages against him resulting from the tree roots protruding onto plaintiffs' property. Defendant contends that the evidence was insufficient to establish a connection between the trees growing on his land and the root damage resulting to the plaintiffs' property. Defendant further argues that, even assuming that the evidence supports the trial court's finding that roots from trees growing on his property actually caused damages to the plaintiffs' property, the claim and resulting injury should not be actionable.

Appellate courts in New Mexico have not addressed the specific issue of whether or not an adjoining landowner has a cause of action against a neighboring landowner for damages or injunctive relief resulting from encroaching branches or roots of trees which protrude from the property of one party onto the land of another. The states which have considered the issue presented here, have articulated diverse results. *See* Annot., 83 A.L.R.2d 936, § 3 at 939 (1962); Annot., 18 A.L.R. 655 (1922); 2 H. Tiffany, *The Law of Real Property*, § 663 at 549 (1939).

Under the rule followed by Massachusetts, an adjoining landowner is denied recovery either in damages or in equity for damage resulting from encroaching tree limbs or roots, unless the trees or plants are categorized as poisonous or noxious. An affected neighboring landowner is restricted to a remedy of self-help; he has the right to cut off the intruding boughs or roots of non-poisonous or non-noxious trees. *Michalson v. Nutting*, 275 Mass. 232, 175 N.E. 490 (1931); Annot., 76 A.L.R. 1109 (1932) (roots of tree on adjoining property repeatedly clogged sewer line on neighbor's land); *Ponte v. Da Silva*, 388 Mass. 1008, 446 N.E.2d 77 (1983) (plaintiff was injured after falling in her driveway

due to sap, leaves and branches that had fallen from neighbor's tree); *see also Sterling v. Weinstein,* 75 A.2d 144 (D.C.1950) (protruding branches of tree dropped leaves and buds clogging neighbors gutters).

The Restatement (Second) of Torts states that a possessor of land is not liable for an invasion of another landowner's use and enjoyment of his land resulting from a natural condition on the land. Comment (a) to this section states that a natural condition "means a condition not in any way the result of human activity," and includes "trees, weeds and other vegetation on land that has not been made artificially receptive to it by act of man." Restatement (Second) of Torts, § 840 at 166–68 (1979). Restatement (Second) of Torts, § 839 (1979) pertains to planted trees and non-natural vegetation on one's property and problems which arise when the limbs or roots of the trees interfere with the use and enjoyment of another's property. This section provides that a possessor of land is liable for an invasion of an adjoining landowner's interest in the use and enjoyment of his land if it is abatable and he fails to take reasonable steps to prevent the invasion. *See Sterling v. Weinstein; Sprecher v. Adamson Companies,* 114 Cal.App.3d 414, 170 Cal.Rptr. 702, *vacated,* 30 Cal.3d 358, 178 Cal.Rptr. 783, 636 P.2d 1121 (1981); *Franchi v. Boulger,* 12 Mass.App. 376, 425 N.E.2d 372 (1981).

Further, Virginia has adopted the rule that equitable relief will be denied where the facts do not reveal the existence of "sensible injury" to an adjoining landowner. *Smith v. Holt,* 174 Va. 213, 5 S.E.2d 492 (1939); Annot., 128 A.L.R. 1217 (1940). In *Smith* the plaintiff sought injunctive relief against an adjoining property owner to prevent the roots and branches of a hedge from invading his property. The court denied injunctive relief but indicated it would apply a different result where it appears that "a sensible injury has been inflicted by the protrusion of roots from a noxious tree or plant onto the land of another, [the owner of land invaded by protruding roots or limbs from a neighbor's

lands] has, after notice, a right of action at law for trespass." 174 Va. at 219, 5 S.E.2d at 495. This same rule was announced in *Countryman v. Lighthill,* 31 N.Y.Sup.Ct. 405 [24 Hun. 405] (1881) (protruding branches from a tree not poisonous or noxious are not a nuisance per se so as to allow a basis for damages; a landowner's remedy is self-help). *Harndon v. Stultz,* 124 Iowa 440, 100 N.W. 329 (1904) (plaintiff may not compel destruction of hedge; her remedy is to cut back protruding branches and roots to boundary line).

However, a number of states adhere to the rule that a landowner may be liable in damages to an adjoining property owner where he maintains a tree which causes "sensible" damage to a neighboring landowner, irrespective of whether the tree is noxious or poisonous in nature. *Gostina v. Ryland,* 116 Wash. 228, 199 P. 298 (1921); *Buckingham v. Elliott,* 62 Miss. 296, 52 Am.Rep. 188 (1884); *Stevens v. Moon,* 54 Cal.App. 737, 202 P. 961 (1921); *Shevlin v. Johnston,* 56 Cal.App. 563, 205 P. 1087 (1922); *Mead v. Vincent,* 199 Okla. 508, 187 P.2d 994 (1947); *Hickey v. Michigan Central Railroad Co.,* 96 Mich. 498, 55 N.W. 989 (1893). The decisions in each of these states appear to be influenced at least in part by specific statutory provisions pertaining to nuisances.

Moreover, in *Grandona v. Lovdal,* 70 Cal. 161, 11 P. 623, 624 (1886), the court held that to the extent that portions of the trees belonging to one landowner extend over the land of a neighboring property owner, the protruding branches constitute a nuisance and "the person over whose land they extend may cut them off, or have his action for damages and an abatement of the nuisance * * *." *See also Stevens v. Moon; Holmberg v. Bergin,* 285 Minn. 250, 172 N.W.2d 739 (1969); *Mead v. Vincent.* The court in *Gostina v. Ryland* reiterated the rule that injunctive relief to abate a nuisance will not be granted, except where there is satisfactory proof that substantial damage has resulted to the property. The rule set forth in *Gostina v. Ryland* generally follows the English com-

mon law. *See also Smith v. Giddy,* 2 K.B. 448 (1904).

The approach adopted by the Hawaii courts varies somewhat from the above rules. In *Whitesell v. Houlton,* 2 Haw. App. 365, 632 P.2d 1077 (1981), the court analyzed the divergent results reached by those states which have ruled upon this issue. The court noted:

[T]he Massachusetts rule is "simple and certain." However, we question whether it is realistic and fair. (Footnote omitted.) Because the owner of the tree's trunk is the owner of the tree, we think he bears some responsibility for the rest of the tree * * *. [I]f the owner knows or should know that his tree constitutes a danger, he is liable if it causes personal injury or property damage on or off of his property. *See Medeiros v. Honomu Sugar Co.,* 21 Haw. 155 (1912) * * *.

Consequently, we prefer a modified Virginia rule. We hold that non-noxious plants ordinarily are not nuisances; that overhanging branches which merely cast shade or drop leaves, flowers, or fruit are not nuisances; that roots which interfere only with other plant life are not nuisances; that overhanging branches or protruding roots constitute a nuisance only when they actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit; *that when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life, in ways other than by casting shade or dropping leaves, flowers, or fruit, the damaged or imminently endangered neighbor may require the owner of the tree to pay for the damages and to cut back the endangering branches or roots * * *.*

* * * [W]e also hold that a landowner may always, at his own expense, cut away only to his property line above or below the surface of the ground any part of the adjoining owner's trees or other plant life. [Emphasis added.]

*Whitesell,* 632 P.2d at 1079.

■ We adopt the rule stated in *Whitesell v. Houlton.* This approach voices a rational and fair solution, permitting a landowner to grow and nurture trees and other plants on his land, balanced against the correlative duty of a landowner to ensure that the use of his property does not materially harm his neighbor. The privilege of a landowner to make use of his property as he sees fit is generally qualified by the requirement that he exercise due regard for the interests of those who may be affected by the landowner's activities on the property. *Scott v. Jordan,* 99 N.M. 567, 661 P.2d 59 (Ct.App.1983); *Jellison v. Gleason,* 77 N.M. 445, 423 P.2d 876 (1967); *Compare Gabaldon v. Sanchez,* 92 N.M. 224, 585 P.2d 1105 (Ct.App.1978). It is the duty of a landowner to utilize his property in a reasonable manner so as not to cause injury to adjoining property. *E.g., Gutierrez v. Rio Rancho Estates, Inc.,* 94 N.M. 84, 607 P.2d 622 (Ct.App.1979), *affirmed,* 93 N.M. 755, 605 P.2d 1154 (1980).

■ Although a landowner is entitled to use his own property, consistent with the law, in a manner calculated to maximize his own enjoyment, a concomitant of this right is that the use and enjoyment of his estate may not unreasonably interfere with or disturb the rights of adjoining landholders, or create a private nuisance. *Scott v. Jordan; see also Jellison v. Gleason.* A person who suffers injury to his property from a nuisance may abate it without resort to legal proceedings provided he can do so without causing a breach of the peace. *State ex rel. Herman v. Cardon,* 112 Ariz. 548, 544 P.2d 657 (1976); *Fontenot v. Central Louisiana Electric Co.,* 147 So.2d 773 (La.App.1962). The question of whether a nuisance exists is ordinarily an issue of fact, not of law, depending upon all of the attendant circumstances. *Scott v. Jordan.* The trial court may grant both damages for already incurred injuries and injunctive relief to prevent future harm where there is a showing

of irreparable injury for which there is no adequate and complete remedy at law. *Hines Corp. v. City of Albuquerque,* 95 N.M. 311, 621 P.2d 1116 (1980); *Norwood v. City of New York,* 95 Misc.2d 55, 406 N.Y.S.2d 256 (1978); *Holmberg v. Bergin.*

In the present case, the trial court found that the defendant had negligently maintained his cottonwood tree and had allowed its roots to cross onto the plaintiffs' property and cause substantial damage. The decision of the trial court is in accord with the rule announced in *Whitesell* which has been adopted by this court in this case. The trial court was within its authority to make this factual determination in light of the evidence and circumstances of the case and this finding will not be disturbed on appeal. It is not the function of an appellate court "to weigh the evidence or its credibility, and we will not substitute our judgment for that of the trial court as to the facts established by the evidence, so long as the findings are supported by substantial evidence." *Getz v. Equitable Life Assurance Society of the United States,* 90 N.M. 195, 198, 561 P.2d 468, 471, *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

## II. SUFFICIENCY OF EVIDENCE

Defendant asserts that the evidence adduced at trial was insufficient to support an award of damages in the amount of $2,500. Additionally, defendant asserts that the evidence failed to establish that the roots in the plaintiffs' yard in fact came from any of the trees located on the defendant's property.

Defendant offered the testimony of a tree expert, Duane Laymon, who stated that the defendant had dug two trenches along a portion of the boundary between the plaintiffs' and defendant's property. The trench was approximately three feet deep. Laymon testified that he had not found any roots that were large enough to cause damage to the plaintiffs' property. He also stated that the stabilizing roots of trees do not extend further than three feet from the drip line of surrounding trees and

that stabilizing roots were the only ones of sufficient size to cause the damage shown to have occurred on the plaintiffs' property. Laymon testified that the cottonwood located on the defendant's property was approximately 35–40 feet from the plaintiffs' house and that in his opinion it was unlikely that the roots which were causing the damage came from the tree on the defendant's land.

Contrasted with the testimony of the defendant's expert was the testimony of Frank Feather, a horticulturist and professor of biology at the University of New Mexico. Professor Feather testified that in his opinion roots from a tree or trees on defendant's property were probably responsible for the damage to the plaintiffs' property.

Plaintiffs also testified that he discovered roots growing around his lawn sprinkler system and under the foundation of his house, the swimming pool and his patio wall. There were no cottonwood trees in plaintiffs' yard. Plaintiff introduced numerous photographs showing the cottonwood tree growing on defendant's property, and large live tree roots near walls, foundations and other structures on plaintiffs' land. Both direct and circumstantial evidence indicates that the roots causing the damage appeared to come from the defendant's property. Plaintiff testified that when he became aware of the harm resulting from the encroaching tree roots, he both orally and by writing placed defendant on notice of this fact. The trial court concluded that defendant could only be held accountable for damages resulting from his tree after notice and that defendant failed to act reasonably to remedy the situation. This evidence amply supports the trial court's finding that the defendant negligently permitted roots from a cottonwood tree to cross onto plaintiffs' property and cause damage.

Plaintiff testified that he obtained an estimate from a contractor of $2,100 to remove roots from around the foundation of his home and to repair structural cracks

caused by the roots. Additionally, plaintiff testified that he obtained an estimate of $300 to remove and replace a concrete slab adjoining his swimming pool. The cost of filling the trench (dug to stop the roots from growing) with 3,000 pounds of rock salt to kill the roots was $128.96. Additionally, plaintiff testified that he incurred sprinkler system repair costs of $70, and had performed labor to repair damage to his home from tree roots, totaling approximately $600. This testimony supports the trial court's award of damages. *E.g.*, *Rayco Drilling Co. v. Dia-Log Co.*, 81 N.M. 101, 464 P.2d 17 (1970).

■ On appeal, defendant points to evidence which, if relied upon by the trial court, would have dictated a different result. The test to be applied on appeal is whether or not there is substantial evidence to support the trial court's findings, not whether there is evidence to support an alternative result. *Cardenas v. United Nuclear Homestake Partners*, 97 N.M. 46, 636 P.2d 317 (Ct.App.1981).

■ In New Mexico a party seeking to recover damages has the burden of proving the existence of injuries and resulting damage with reasonable certainty. *Sanchez v. Martinez*, 99 N.M. 66, 653 P.2d 897 (Ct. App.1982). However, the theory of damages is founded on the principle of making the injured party whole. In computing damages the fact finder is not held to an inflexible or precise standard; the object is to afford just and reasonable compensation for the injuries sustained. *Topmiller v. Cain*, 99 N.M. 311, 657 P.2d 638 (Ct.App. 1983); *see also* NMSA 1978, UJI Civ. 18.2 (Cum.Supp.1984). The record supports the trial court's award of damages.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

NEAL, J., concurs.

BIVINS, J., dissents.

BIVINS, Judge (dissenting).

My disagreement with the majority opinion may be grouped as follows: (1) the adoption of an inappropriate rule of law for New Mexico; (2) the improper application of that law to the facts of this case; and (3) the erroneous assessment of damages.

The majority adopts the rule stated in *Whitesell v. Houlton*, 2 Haw.App. 365, 632 P.2d 1077 (1981) referred to in that case as the "modified Virginia rule." In effect this rule provides for liability on the part of the owner of a tree when overhanging branches or protruding roots actually cause, or there is imminent danger of them causing, sensible harm to property other than plant life. "Sensible" in this context undoubtedly means "perceptibly large: of a significant size, amount, or degree: Considerable * * *" Webster's Third New International Dictionary (1966), because the rule excludes liability for minor damages such as casting shade or dropping leaves, flowers or fruit.

In my opinion, the Massachusetts view adopted more than fifty years ago in *Michalson v. Nutting*, 275 Mass. 232, 175 N.E. 490 (1931), Annot., 76 A.L.R. 1109 (1932) offers the preferable rule and one best suited to the facts of this case. The facts in *Michalson* are strikingly similar to those in the case before us. In that case plaintiffs alleged that roots from a poplar tree growing on defendant's property had penetrated their property and had filled up sewer and drain pipes, and had also grown under a cement cellar causing it to crack. The court held that plaintiffs were not entitled to equitable relief to compel their adjoining landowner to remove roots invading plaintiffs' property or to restrain such encroachment or recover damages therefor. Quoting in part from *Countryman v. Lighthill*, 31 N.Y.Sup.Ct. 405 [24 Hun 405], the court in *Michalson* said:

" 'It would be intolerable to give an action in the case of an innoxious tree whenever its growing branches extend so far as to pass beyond the boundary line and overhang a neighbor's soil.' It

would be equally intolerable where roots penetrate the neighbor's soil."

175 N.E. at 490.

*Michalson* also holds that the neighbor, though without right of action if harm results to him, is not without a remedy. He can cut off the intruding boughs and roots. The rationale of the opinion is stated as follows:

The common sense of the common law has recognized that it is wiser to leave the individual to protect himself, if harm results to him from this exercise of another's right to use his property in a reasonable way, than to subject that other to the annoyance, and the public to the burden, of actions at law, which would be likely to be innumerable and, in many instances, purely vexatious.

175 N.E. at 491.

While agreeing that the Massachusetts rule was "simple and certain" the Intermediate Court of Appeals of Hawaii in *Whitesell* questioned whether it was realistic and fair, especially when applied to banyan trees in the tropics. *Whitesell* involved a banyan tree, described in the opinion as a large evergreen of the fig family whose branches send out aerial roots which grow down to the soil to form secondary trunks. The trunk of the tree in that case was approximately twelve feet in diameter. Its height was 80 to 90 feet with foliage extending 100 to 110 feet and overhanging the plaintiffs' property. The tree damaged the plaintiffs' garage, their car and, as a result of a storm which broke large branches, threatened to do further damages. The defendant failed to respond to requests to cut the intruding branches. The court upheld an award of damages which included the cost of repairs and cost of trimming the tree.

A rule which imposes liability for the mischief done by one's invisible tree roots, as in the case before us, would not only discourage the planting and cultivation of trees, but would encourage disagreements between neighbors, leading, as here, to vexatious lawsuits.[1] The rule adopted today might be well-suited for a lush tropical state such as Hawaii, but is ill-suited for an arid and sparsely vegetated state such as New Mexico where many residents live on small sized lots. After reviewing the various rules adopted by other states, the court in *Sterling v. Weinstein,* 75 A.2d 144 (D.C. 1950) said:

The simplicity and certainty of the Massachusetts rule appeals to us. It leaves no doubt as to the rights and obligations of the parties. While it places the burden on the owner of land to protect himself by cutting the invading branches and roots, generally that burden is not great. It is of some significance that in this and many other jurisdictions there have been no reported cases involving this question. This would indicate to us that generally these questions between adjoining owners may be adjusted without the aid of courts and that the self-help rule is sufficient.

*Id.* at 148. I agree with that statement.

This brings me then to the difficulties of applying the *Whitesell* rule to the facts of the present case. That rule is based on a non-noxious tree becoming a nuisance only when it causes, or there is imminent danger of it causing, sensible harm to property other than plant life. Nuisance does not constitute a separate tort itself. *See Moreno v. Marrs,* 102 N.M. 373, 695 P.2d 1322 (Ct.App.1984), *cert. pending.* Negligence by a defendant may, however, provide the basis for an award of nuisance damages. *See Moreno.* In the present case plaintiff plead defendant's negligence.

The trial court found the tree non-noxious, but that "Defendant Fox negligently maintained the cottonwood tree and allowed its roots to cross into the Plaintiff's property and damage the Plaintiff's house and patio." The facts show that defendant moved from his property in Albuquerque and was living in California when given

---

**1.** The exhibits reflect defendant removed a number of trees in the 1970's to accommodate

plaintiff.

notice sometime in late May or June 1979 that plaintiff was claiming damage to the common wall, a concrete slab, foundation and sprinkler system due to defendant's cottonwood tree. Following an exchange of correspondence between defendant and plaintiff's attorney, defendant traveled to New Mexico in October, 1979 to investigate the claim. He dug a trench between his tree and the common wall as described in the majority opinion. No roots were found. Defendant engaged a landscape contractor to inspect the trench and advise him what cause of action to take. The landscaper found no roots large enough to do damage and gave the opinion that plaintiff's problems were not due to roots coming from defendant's property. Plaintiff's expert testified that it would be reasonable to assume that the cottonwood was not the cause of the problem if roots could not be found in the trench within thirty inches of grade. Defendant and his landscape contractor did not find any roots; what more could defendant be expected to do? Plaintiff did not quarrel at the time with the steps defendant had taken. Defendant returned to California and was sued in December 1979. Even if we accept the testimony of Professor Feather that the roots from defendant's cottonwood probably were responsible for the damage to plaintiff's property, there is no evidence that defendant's conduct caused that damage. Measured by what a reasonably prudent person would have done, coupled with Professor Feather's testimony, I would hold no liability.

Because defendant had no notice or knowledge before the summer of 1979, how could he possibly be liable for damage caused before that time, even assuming his own investigation inadequate? In *Texas-New Mexico Pipeline Co. v. Allstate Construction Ins.*, 70 N.M. 15, 369 P.2d 401 (1962) the supreme court held that where a contractor was without knowledge or notice of an underground pipeline, he could not be chargeable with negligence in striking the pipeline. Cases dealing with landowner-invitee duties and liability are instructive on this point. *Dempsey v. Alamo*

*Hotels, Inc.*, 76 N.M. 712, 418 P.2d 58 (1966) held that a possessor of land is liable for physical harm caused to his invitees by a condition on the land if, but only if, he knows or by the exercise of reasonable care would have discovered the condition. *See also Simon v. Akin*, 79 N.M. 689, 448 P.2d 795 (1969); *Brown v. United States*, 122 F.Supp. 166 (D.N.M.1954). There is no evidence that defendant knew or should have known before the summer of 1979 that the subterranean roots from his cottonwood had invaded plaintiff's property. Even if defendant had been living on the property, rather than in California, there is no evidence to prove notice or knowledge.

*Whitesell* predicates its rule on notice or knowledge that a property owner's tree constitutes a danger. With a banyan tree, an owner would know what the roots of that tree are doing because they are plainly visible. Not so with the cottonwood in question. There is no evidence of the roots running along the surface, and as noted, trenches dug failed to reveal any roots going toward plaintiff's property. In my view, the "banyan tree rule," even if adopted, cannot be applied to the facts of this case.

Closely related to notice or knowledge problem is the assessment against defendant for damages accruing before he had notice. The trial court concluded that "Defendant Fox had the right to grow a non-noxious tree on his property and could only be held liable for damage accruing after notice and then only if he did not take reasonable action to remedy the situation." Even if it can be said that defendant failed to take reasonable action to remedy the problem after being given notice, the trial court's conclusion makes clear he was to be held liable only for damages accruing after notice. Yet, the amount awarded appears to reflect the full amount for repairs and corrective action. The award then is contrary to the trial court's own conclusion.

Further, unless we make property owners guarantors, I do not understand how defendant could be held liable for any damage accruing before he had notice. The

expert testimony makes clear that at least a portion, if not the greater portion, of the damage was done before defendant was notified. This is borne out by plaintiff's letter of June 19, 1979, which outlines damage done as of that date.

For the foregoing reasons I dissent, and would dismiss plaintiff's suit as not being actionable. At the very least, I would remand to apportion the damages so that defendant not be liable for damages accruing before he had notice.