SYLVESTER ET AL., PLAINTIFFS IN ERROR, v. JEROME, DEFENDANT IN ERROR.

1. EQUITY—INJUNCTIONS.

Injunctive relief will not be granted to stay a mere private nuisance, unless it appears that great and irreparable mischief will result from withholding the process, but where that appears, and that a suit at law will be an ineffectual protection against future acts of a similar character, equity has jurisdiction.

2. SAME.

The statute making owners of reservoirs liable for all damages resulting from leakage, or overflow of waters therefrom, or by floods etc., does not deprive a court of equity of jurisdiction to restrain the filling of a reservoir, when the remedy at law is not adequate to a particular exigency.

3. PRACTICE.

A writ commanding the defendants to refrain and desist from diverting water into a reservoir, did not forbid the repairing or changing the reservoir so as to prevent the injury complained of, and whenever it was so changed they were at liberty to apply to the court for a modification or dissolution of the injunction.

4. PLEADINGS.

Facts occurring subsequent to the commencement of an action should be presented by supplemental pleadings, and not by amendment to the original proceedings.

5. INJUNCTION.

The right to an injunction to prevent the flooding of premises within the corporate limits of Denver, which have been platted into streets, alleys, blocks, etc., is in no way dependent upon the legality of the plat.

6. EVIDENCE.

The fact that others have constructed reservoirs in the same locality can give no right to maintain one and permit water to seep therefrom to the damage of adjoining lands. Evidence of such fact is irrelevant and inadmissible.

7. DISCRETION—LIMITING ARGUMENTS.

The fixing a limitation upon arguments of counsel in a civil action is a matter almost entirely within the discretion of the trial court.

*Error to the District Court of Arapahoe County.*

ACTION for injunctive relief to prevent the flooding of plaintiff's property by water from defendants' reservoir.

In the district court a temporary restraining order was granted, which, after several unsuccessful attempts at dissolution was, upon final hearing, dissolved, the defendants, in the meantime, having reinforced the banks of their reservoir so as to prevent seepage therefrom. Upon the final hearing, it was specifically adjudged that the original injunction was properly issued, but that the occasion therefor had since been removed by the defendants, wherefore the same was dissolved. The defendants being dissatisfied with the result, in so far as it adjudged the original injunction to have been rightfully granted, excepted to the judgment, and bring the case here upon error.

The original and only complaint was filed in the district

court on the 5th day of December, 1888. In this pleading the plaintiff alleges:

" That he is the owner in fee of that certain tract and parcel of land situated in the west half of section 4, township 4, south of range 68 west, Arapahoe county, Colorado, which is platted and known as Jerome park, and as the first addition to Jerome park. That he has been the owner of said tracts and parcels of land ever since the month of June, 1887, buying a large portion thereof some time prior to said date.

" Plaintiff further says, that immediately after the purchase of said tracts and parcels of land the same was platted as Jerome park, and as the first addition to Jerome park, and improvements made thereon and the same devoted to residence purposes, and that since said date not less than seventy-five houses have been built on said tracts and parcels of land, and that most of the same are completed and occupied by residents.

" Plaintiff further says that he is still continuing the improvement of said land, and that the same has been until this time in active demand for sale as residence property and for the construction of dwellings thereon.

" Plaintiff further says that late in the summer of 1887, and after the plaintiff had purchased the above described tracts and parcels of land and improved the same and devoted them to residence purposes, the defendants acquired the following described tract and parcel of land, to wit: Beginning at a point on the dividing line between the northwest quarter and the southwest quarter of section 4, township 4, south of range 68 west, 326 feet east of the northwest corner of said southwest quarter; thence east on said dividing line 281.5 feet more or less to a point 710 feet west from the northeast corner of the northwest quarter of said southwest quarter; thence at right angles with said dividing line 330 feet; thence east 345.5 feet; thence south 208 feet; thence west 627 feet to a point 538 feet south of the place of beginning; thence north 538 feet to the place of beginning, containing 5.12 acres more or less. That said tract of land lies immediately east

and adjacent to that part of the above described premises owned by the plaintiff, known as the first addition to Jerome park, and immediately contiguous to block 7 in such addition.

" Plaintiff further says that said defendants have excavated on said premises acquired by them as aforesaid an excavation from four to seven feet in depth below the natural surface of the soil, and extending over almost the whole of said tract of 5.12 acres, and have thrown up embankments about such excavation three to five feet above the natural surface of the soil.

" Plaintiff further says that on or about the 22d day of November, 1888, the defendants turned a large stream of water into the said excavation, and have ever since continued to flow the same.    That there is now running into said excavation a rapid stream of water therein, diverted by said defendants, which is not less than three inches in depth and four feet in width, and that the defendants have maintained such stream, or a much larger stream continuously since the same was diverted into said excavation, and that the defendants have thereby made a pond of water some four or five acres in extent, and from three to seven feet in depth.

" Plaintiff further says, that the water thus diverted into said excavation by defendants escapes therefrom upon the lands owned by the plaintiff, as above described, almost immediately after the same are diverted, by reason of the loose construction of the said pond and the gravelly character of the soil lying beneath the same; and that after the pond becomes partially filled it escapes about as rapidly as it flows into the pond, and that the result thereof has been to flood a large part of the premises owned by the plaintiff.    That lots 14 to 33 in block 7 are flooded with water, so that the same stands thereon from six inches to two feet in depth.    That a large part of the remainder of plaintiff's premises are so affected by the water percolating through the gravelly soil from the said pond as to fill or flood the cellars of the houses owned by the plaintiff and his grantees on said premises.

" Plaintiff further shows that he is the owner of brick

houses lately constructed on lot 17 in block 7, and on lot 48 in block 6, and on lot 22 in block 4, in said Jerome park addition, each of which have brick cellars which would be water tight, except from the acts of the defendants aforesaid in maintaining the said pond, but that the maintenance of said pond has flooded said cellars so that the water now stands in depth from six inches to two feet, and it has been impossible for the plaintiff to continue work and complete the said houses on account of the flooding of the same with water as aforesaid.

" And plaintiff further shows, that upon lots 57 and 58 in block 6, 55 and 56 in block 6, 59 and 60 in block 6, 8 and 9 in block 4, 15 and 16 in block 5, in said Jerome park addition, houses are owned and occupied by certain grantees of the plaintiff, and that the cellars connected with said houses have been flooded in the same manner as those owned by the plaintiff by the action of the defendants, and that the plaintiff is greatly injured thereby by reason of his interests as a seller of the same, and as the owner of the adjoining property. And plaintiff further shows that he is the owner of a large part of said addition, amounting to over two hundred lots, which are unsold, and the sale of which is greatly injured, if not entirely prevented by the maintenance of the pond aforesaid.

" Plaintiff further shows that he has sold from the said Jerome park and the said addition thereto about one hundred and fifty lots, and that the acts of the defendants greatly injure the further sale thereof, and that it will be impossible to sell any of the lots lying under said pond for building purposes if the same is still maintained.

" Plaintiff further shows that he has requested defendants to abate the said nuisance and discontinue the maintenance of said pond, and that they refuse to do so; and plaintiff says that if the said pond is maintained during the progress of this cause it will produce great and irreparable injury to the plaintiff; that he has already been damaged by the acts of the defendants in not less than the sum of two thousand

dollars, and that if the same is further maintained his damages will be of a sort which cannot be estimated, nor can he be adequately compensated by any damages which could be recovered at law.

" Wherefore plaintiff prays:

" 1. That a temporary writ of injunction issue out of this court enjoining the said defendants and each of them, and their and each of their agents, servants and employees, from further diverting the water into the said excavation above described, and from causing any further water to flow therein during the continuance of this suit.

" 2. That upon the final hearing of this cause said injunction be made perpetual.

" 3. For the sum of two thousand dollars damages, and for costs of this suit."

A temporary injunction was issued on December 8, 1888, and duly served upon the defendants. On the same day the defendants filed their answer. In this they admit the ownership of the property as alleged. They further admit that at the time of the commencement of the action they were engaged in filling said reservoir with water. All the other allegations of the complaint are specifically denied. As a second and further defense they allege that the plaintiff consented to the construction of defendant's reservoir, and that the same was constructed before there were any improvements upon plaintiff's land.

Afterwards, by amendment to the original answer, and as a further defense, it was alleged that plaintiff's lands were within the corporate limits of the city of Denver, and that the same had been platted into lots, blocks, streets and alleys, and the lots sold in violation of the charter of such city.

By a further amendment tendered for filing, it is alleged that there are many practicable methods by which seepage may be prevented from defendant's reservoir, among which a number are given in detail; and it is also averred that since the preliminary injunction was issued, such changes had been made as would effectually prevent the damages complained

of. The court, being of opinion that these matters could more properly be embraced in a supplemental pleading than by amendment, refused to permit this amendment to be filed, and the same matters were under protest set forth in a supplemental answer. In this it is stated that, by the construction of a certain drainage ditch and other changes, the reservoir of defendants no longer permits of seepage.

Mr. J. WARNER MILLS, for plaintiffs in error.

Mr. JOHN L. JEROME, for defendant in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is contended that the facts stated in the complaint are not sufficient to authorize equitable relief.

The remedy by injunction was invoked for the purpose of restraining the defendants from running water in a certain reservoir, from whence it was escaping by seepage upon plaintiff's land, flooding his building lots, and filling the cellars of his houses with water, as it is alleged.

As a general rule, injunctive relief will not be granted to stay a mere private nuisance, unless it appears that irreparable mischief will result from withholding the process. But where it appears that great and irreparable mischief will result from the wrongs complained of, and that a suit at law will be ineffectual as a protection against future acts of a similar character, the jurisdiction of equity is now firmly established. High on Injunctions, (3d ed.) secs. 802, 839.

It is urged by appellants that the rule is changed in this state by reason of the following provision of our statute : " The owners of the reservoirs shall be liable for all damages arising from leakage or overflow of the waters therefrom or by floods caused by breaking of the embankments of such reservoirs." Mills' Ann. Stat., sec. 2272. The foregoing is simply an affirmation of a common law principle. It was enacted in this state as part of an act with reference to irri-

gation. In this act the right is given for the construction of reservoirs for certain purposes, and the context indicates, we think, that the paragraph relied upon was inserted as a precautionary measure, under the apprehension that without it, it would be possible to place such a construction upon the act as would relieve owners of reservoirs from liability for leakage and overflow. It does not change the rule concerning injunctive relief. In order to have this effect, the remedy at law must be direct, certain and adequate. When the remedy is not adequate to a particular exigency, then a court of equity has jurisdiction. The remedy at law in this case is inadequate because the injuries that were being suffered by plaintiff were irreparable; and also for the reason that a suit at law would not prevent the inflicting of like injuries in the future. Story's Eq. Pl., sec. 473; High on Injunctions, sec. 839; *Sprague v. Rhodes et al.*, 4 R. I. 301.

The writ as issued commanded the defendants to refrain and desist from diverting water into the reservoir. Complaint is made on account of the scope of the writ. It is claimed that it should have simply enjoined the defendants from running water in the reservoir as then constructed. We do not think this contention of counsel is well taken. The writ did not prevent the defendants from repairing or changing the reservoir so as to prevent the injury to plaintiff complained of, and whenever the reservoir was so changed the defendants were at liberty to apply to the court to have the injunction modified or dissolved. They availed themselves of this right from the first, and from time to time made changes in the reservoir, and were allowed under the direction of the court to experiment by running water into it. While, therefore, the injunction as framed was warranted by the facts, were it otherwise, the defendants are not in a position to complain because they were not injured thereby, having been allowed to make the necessary experiments from time to time, until the reservoir was properly constructed, when the injunction was promptly dissolved.

The refusal to allow facts occurring subsequent to the com-

mencement of the action to be pleaded as an amendment to
the original answer, was not error.  By an amendment to
the code of civil procedure, it is provided that, " When facts
occurring subsequent to the commencement of an action ren-
der it proper, the same may by leave of the court be presented
by supplemental pleadings, and issue taken thereon as in case
of original pleadings."  Session Laws, 1889, p. 73.  These
facts were pleaded in the supplemental answer filed, and were
given due weight by the district court.  The defendants'
rights were in this manner fully protected, and the statute as
to pleading observed.

Plaintiff's premises are situate within the corporate limits
of the city of Denver.  By an amendment to the city charter
in force at the time of the acts complained of, it is provided,
" That it shall be unlawful for any person or persons to plat
or lay out into streets, alleys, blocks and lots any land, within
the corporate limits of the city of Denver, and offer the same
for sale, either publicly or privately, unless it be platted, and
the plat be also accepted by the city council."  Session Laws,
1887, p. 83.  The provision is relied upon to defeat this ac-
tion.  If plaintiff's right to the relief sought rested upon the
validity of his plat, or a right to sell the lots, there would be
force in this contention.  Until the premises are platted ac-
cording to the statute and accepted by the city, they do not
properly constitute an addition to the city, but this does not
prevent the occupation or improvement of the premises by
the owner or his grantees.  It certainly gives the defendant
no right to flood the lands with water, and render the same
unhealthy, uninhabitable and worthless.  The plaintiff's right
to maintain this action is in no way dependent upon the le-
gality of the plat; it could be maintained were the land ranch
or acre property.

Upon the final hearing the court refused to allow defend-
ants to show that the location of their reservoir was in a lo-
cality abounding in reservoirs, and utilized for the gathering
and storage of ice, and this ruling is assigned for error.  The
evidence rejected was irrelevant to the issue.  It is entirely

immaterial whether or not the locality was so used. The defendant could not gain a right to maintain a reservoir and permit the water to seep therefrom to the damage of the adjoining lands, by showing that others had constructed reservoirs in the same locality, or that other lands in that vicinity were used for the ice business.

The ruling of the court refusing to allow the defendants to show that the plaintiff might make his cellar water tight by the use of cement must be upheld. Plaintiff was under no obligation, equitable, legal or moral, to make his cellar water tight to avoid in part the consequences of the wrongful act of defendants. Aside from this, the flooding of the cellars with water was only a part of the injury complained of.

Upon the final hearing the argument was limited to forty-five minutes for each side, and this restriction is assigned for error. The fixing of a limitation upon arguments of counsel is a matter almost entirely within the discretion of the trial courts, and unless such discretion has been grossly abused this court will not be justified in interfering. The parties in the court below presented several applications for the dissolution of the injunction prior to the final hearing, and no doubt the questions involved were freely discussed upon these interlocutory applications, so that a lengthy argument upon the final hearing was not required. Be this as it may, however, we are not prepared to say that the time allowed was not sufficient to fully present the questions at issue.

The trial court seems to have proceeded with extreme caution in the determination of the issues presented. From time to time, upon application, the defendants were allowed to change the banks of their reservoir, and experiment therewith by turning water into the same. As soon as the court was advised that the reservoir was sufficient to prevent the seepage complained of, the injunction was dissolved. Under these circumstances we are unable to find that the defendants have any just ground of complaint. The judgment of the district court will therefore be affirmed.

*Affirmed.*