[No. 5518.]
[No. 3190 C. A.]

THE CANON CITY AND CRIPPLE CREEK RAILROAD CO.
v. OXTOBY.

1. **Landlord and Tenant—Liability of Landlord—**Landlord letting premises with a nuisance upon them, or any structure or thing which in use will necessarily or probably occasion injury to a stranger, is liable jointly with the tenant, if such injury occur.—(216)

2. **Nuisance — Seepage of Water —** One who, by an excavation upon his own land, made even to accomplish a lawful and proper purpose, collects surface water which, gradually seeping away, injures the land of another below him, is liable.—(216)

3. **Surface . Water—**Land owner may not collect surface water in an artificial pond on his own lands and allow it to seep and percolate away to the injury of the lands of another below him.—(218)

4. **Negligence—Unforeseen Results—**One who collects water in an artificial pond is bound to take notice that, if not drained, it will percolate into the adjacent lower lands.—(217)

*Appeal from Fremont District Court*—Hon. LOUIS W. CUNNINGHAM, Judge.

Mr. HENRY M. BLACKMER, Messrs. SCHUYLER & SCHUYLER, for appellants.

No appearance for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

Action to recover damages caused by seepage water which escaped from an artificial excavation or pond of the defendants, and reached and injured plaintiff's lands.

The Canon City and Cripple Creek Railroad Company built a line of railway extending from Canon City to Oro Junction, in Fremont County, and, in order to make the necessary and proper embankments in maintaining the grade of its road-bed,

made an excavation called a borrow pit, wholly within its right-of-way. It is about 500 feet long by 100 feet wide, with a surface area of a little more than an acre, and a depth of 4 to 7 feet. The Canon City and Cripple Creek Railroad Company leased its railway to the Florence and Cripple Creek Railroad Company, and the latter operated the same. After the railroad was constructed and the borrow pit made, plaintiff purchased a five-acre tract of ground lying to the south of, and near by, the right-of-way. The natural slope of the ground was toward the south, and the surface water which falls upon the right-of-way and upon lands north thereof, naturally flows therefrom down across plaintiff's land. Soon after the plaintiff bought his land, the borrow pit or excavation became filled with surface and flood waters, and water has continuously remained therein, and about three months after the first filling, plaintiff's land began to show signs of alkali, and the alkali and marshy condition thereof continued and gradually spread until about two and a half acres were so affected, and rendered practically worthless. The northernmost extremity of that portion of plaintiff's land which exhibits this altered condition is about 750 feet south of the southern edge of the borrow pit. The plaintiff claims that this injury was occasioned by water seeping from the borrow pit onto his land. Upon trial to the court without a jury, the findings were in his favor, a judgment to the amount of the damage was awarded against both defendants, and they appealed.

The reasons given for reversal of the judgment are: First, that the Canon City Railroad Company, the lessor, in no event was liable; second, that such damage could not reasonably have been anticipated; third, that the seepage alleged was not proven;

fourth, that the hurt, if any, is *damnum absque injuria*.

1.   It is the general rule that, where a landlord lets his land in good condition, and by the terms of the lease is not obliged to keep the same in repair, for an injury which results to third persons from an improper use of, or from a nuisance put upon, the same and maintained by the tenant, the latter, and not the former, is liable. But where, at the time of the lease, a nuisance upon the premises has been created and still exists, or where something has theretofore been put upon, or done to, the land which, from the use to be made of it, necessarily, or probably, will cause injury to a stranger, the lessor, as well as the lessee, may become liable.—2 McAdam on Landlord and Tenant (3d ed.), § 374 *et seq.*

The borrow pit in this case was made by the lessor in such a place that, necessarily, surface water from rains and melting snow would collect in it, and what did not pass off by evaporation would, in the natural course of things, have a tendency to seep through the banks and sink through the bottom of the pit, and, following the slope of the country, ultimately reach plaintiff's land.

If there is liability in such a case, the lessor can not escape on the ground urged. Although the point is not made here by defendants that the lessee might not be held provided the alleged injury was proven, and if damages in such a case are recoverable at all, there is more doubt as to the liability of the lessee than the lessor; but, as exemption of the lessee is not claimed by defendants upon the ground that it is not responsible merely because it uses the leased premises into which surface waters flow, without any action in that direction on its part, we do not propose to raise that question ourselves.

2.   The point is made by defendants, that such

damage could not reasonably have been foreseen. If such a defense is good in this kind of a case, we think proof of it has not been made. The evidence shows, and it is a matter of common knowledge, that water collected in a reservoir, if the same is not artificially drained or its banks and bottom puddled, has a tendency to seep and will seep or percolate into the adjacent lands, and if, as here, the same is adobe soil, to its injury. Defendants are presumed to know of this physical law.

3. There is no doubt about the injury to plaintiff's land; but as to whether water from the borrow pit seeped through the intervening soil, and actually reached his land and caused that injury, the evidence is conflicting. There is, however, sufficient legal and competent evidence to sustain the court's finding that such was true, and, under our established rule, we cannot interfere with this finding.

4. The important and difficult question in this case is, whether, assuming that plaintiff's land was injured, and that it was the result of the acts of defendants in collecting surface waters in the borrow pit, the defendants are liable therefor. An examination of the many apparently conflicting decisions upon the law of surface waters in this country and England reveals that there are three different rules applicable thereto: What is called the civil law, the common law, and the modified, rules.—30 Am. & Eng. Enc. of Law (2d ed.) 323, *et seq.*

By our statute, the common law of England, so far as the same is applicable and of a general nature, is the rule of decision in this State. Unless local conditions render it inapplicable to surface waters, the common-law rule prevails with us. In our view of the facts, however, we do not think it makes any difference which rule is to be followed; for, whether the relative rights of adjacent land owners as to sur-

face waters is to be determined by the civil law, or
the common law, or the so-called modified rule,
under neither has one owner the right to collect in
an artificial channel, or reservoir, or pond, surface
water and discharge it upon his neighbor's lands to
his injury, in a different manner from that in which
it would naturally flow if not interfered with, or to
cast it in a greater volume, or permit it to escape
thereon in a more injurious way, either upon the sur-
face or under the surface by the natural law of per-
colation.

By section 2272, Mills' Ann. Stats., the owner of
a reservoir which is built and used for storing water
for the purpose of irrigation, is made liable for all
damages arising from leakage or overflow of the
waters therefrom, or by floods caused by the break-
ing of its embankments; and a similar statutory lia-
bility is imposed upon the owner of irrigating
ditches. It is true that this responsibility is laid only
upon the owners of reservoirs which store water for
irrigation. This right of storage includes surface or
flood waters, as well as waters diverted from a natu-
ral watercourse. It was said, in *Sylvester v. Jerome,*
19 Colo. 128, that the foregoing statute imposing lia-
bility upon owners of reservoirs is simply an affir-
mation of a common-law principle, thereby indicat-
ing that, at common law, one who collects surface
waters in a pond or reservoir is liable in damages
for injuries from seepage therefrom to the adjacent
lands of another. In the absence of the foregoing
statute, which, in the view of this court in the case
cited, is but an affirmation of what the rule was at
the common law, for injuries occasioned to the ad-
joining lands of another by seepage of water, there
is just as much reason for imposing liability upon
the owner of the pond or lake into which he has
gathered surface water for no other beneficial use,

but merely as an incident to a proper use of his own lands, as upon one who stores water in a reservoir for irrigation. Among the cases which we think in principle sustain our conclusion, are: *Mulvihill v. Thompson,* 114 Iowa 734, 87 N. W. 693; *Hurdman v. Northeastern Ry. Co.,* 3 C. P. D. 168; *Central of Ga. Ry. Co. v. Windham,* 126 Ala. 552; *Springfield & M. Ry. Co. v. Henry,* 44 Ark. 360; *Templeton v. Voshloe,* 72 Ind. 134, s. c. 37 Am. Rep. 150; *Adams v. Walker,* 34 Conn. 466, s. c. 91 Am. Dec. 742; *Pettigrew v. Village of Evansville,* 25 Wis. 223, s. c. 3 Am. Rep. 50; *Jacobson v. Van Boening,* 48 Neb. 80, 66 N. W. 903, s. c. 58 Am. St. Rep. 684; *Vernum v. Wheeler,* 35 Hunn. N. Y. 53; Angell on Watercourses (6th ed.), §§ 108-j and k, 339; *Vanderviele v. Taylor,* 65 N. Y. 341, 346.

The judgment is affirmed.                    *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.