607 P.2d 622

**Ralph A. GUTIERREZ, Mary S. Gutierrez, his wife, and Ruth H. Lucero a/k/a Aline Lucero, Plaintiffs-Appellees,**

v.

**RIO RANCHO ESTATES, INC., and AMREP Construction Corporation, Defendants-Appellants.**

No. 3273.

Court of Appeals of New Mexico.

April 12, 1979.

Writ of Certiorari Granted May 17, 1979.

Jerrald J. Roehl, Richard A. Winterbottom, Jerrald J. Roehl & Associates, Albuquerque, for defendants-appellants.

Joseph H. Mercer, Mercer & McCash, Albuquerque, for plaintiffs-appellees.

## OPINION

SUTIN, Judge.

Plaintiffs sued defendants for damages on theories of negligence and nuisance as a result of water runoffs from defendants' property onto plaintiffs' land. The court instructed the jury on *strict liability* and the jury returned a verdict for plaintiffs. Defendants appeal from the judgment entered. We reverse.

The facts in this case are fairly simple and undisputed. Plaintiffs are owners of 14 acres of land which lie adjacent to and below the development of Rio Rancho Estates, the property of defendants. Defendants had constructed retention dams and drainage facilities from which water was discharged onto plaintiffs' land. Plaintiffs claimed that flooding and siltation harmed their land.

The court instructed the jury that:

If you find that the Defendants have collected surface water in an artificial channel *and allowed it to flow in increased quantities on the land of plaintiff* in a manner different from which it would naturally flow, *then the Defendants are strictly liabile [sic] even in the absence of negligence.* [Emphasis added.]

Defendants claim this instruction was erroneous because they were not subject to liability without fault. We agree. The

content of the instruction given was taken from a quotation in *Groff v. Circle K. Corporation*, 86 N.M. 531, 525 P.2d 891 (Ct.App. 1974) and *Little v. Price*, 74 N.M. 626, 397 P.2d 15 (1964).

To determine whether defendants may be strictly liable for surface water damage to an adjacent landowner, we must review New Mexico decisions, the application of *Rylands v. Fletcher*, infra, Restatement, Torts, §§ 519 and 520 (1938), Restatement, Torts 2d, Tentative Draft on Changes of Sections 519 and 520 (1964), and §§ 519 and 520 (1977). The tortuous dispute through which *Rylands v. Fletcher* has meandered the past 100 years requires a careful study to avoid any misconception of the law.

### A. New Mexico adopted the doctrine of Rylands v. Fletcher.

*Groff* and *Little, supra*, quoted with approval a lengthy passage from *Canon City & C.C.R. Co. v. Oxtoby*, 45 Colo. 214, 100 P. 1127 (1909). In *Oxtoby*, the defendant railroad excavated a large "borrow pit" to make the embankment that was necessary to maintain the grade of its roadbed. The "borrow pit," a more or less permanent excavation, in effect a reservoir, collected surface water which escaped by percolation and seepage and injured the lower land of plaintiff. It should be noted that the "borrow pit" was created by the railroad for its own purposes during the development of the roadbed but not used after its completion. There were no drainage facilities.

The instruction given *supra*, was taken from the quoted passage in *Groff* and *Little*. Stripped of excessive verbiage so that it may apply to the instant case, the rule adopted in New Mexico is:

> Under the common law, an adjacent land owner does not have the right to collect surface water in an artificial channel and discharge it upon his neighbor's land to his injury, in a different manner from that in which it would naturally flow if not interfered with, or to cast it in a greater volume thereon in a more injurious way on the surface.

This Colorado rule of law follows the doctrine of *Rylands v. Fletcher*.

The history, analysis and development of *Rylands v. Fletcher* (cited as *Fletcher v. Rylands*, 3 H. & C. 774, 159 Eng.Rep. 737 (Ex. 1865), *rev'd in Fletcher v. Rylands*, L.R. 1 Ex. 265 (1866), *aff'd in Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868)), appears in *Wheatland Irrigation District v. McGuire*, 537 P.2d 1128 (Wyo.1975); *Clark-Aiken Co. v. Cromwell-Wright Co., Inc.*, 367 Mass. 70, 323 N.E.2d 876 (1975); *Cities Service Company v. State*, 312 So.2d 799 (Fla.App.1975); Prosser, Selected Topics on the Law of Torts, pp. 135–90 (1954); Prosser, Torts, § 78 (4th ed. 1971); Morris, *Hazardous Enterprises and Risk Bearing Capacity*, 61 Yale L.J. 1172 (1952); MacDonald, *The Rule in Rylands v. Fletcher, and its Limitations*, 1 Canadian B. Rev. 140 (1923); Carpenter, *The Doctrine of Green v. General Petroleum Corporation*, 5 So.Cal.L.Rev. 263 (1932); Smith, *Tort and Absolute Liability-Suggested Changes in Classification*, 30 Harvard L.Rev. 409 (1917); Foster & Keeton, *Liability Without Fault in Oklahoma*, 3 Okla.L. Rev. 1 (1950); Comment, O'Hara, *Strict Liability for Hazardous Use of One's Land etc.*, 4 Fla.St.U.L.Rev. 304 (1976); Prosser, *Nuisance Without Fault*, 20 Tex.L.Rev. (1942); Bohlen, *The Rule in Rylands v. Fletcher*, 59 U.Pa.L.Rev. 298 (1911); Thayer, *Liability Without Fault*, 29 Harvard L.Rev. 801 (1916).

"Perhaps no tort case in the history of our jurisprudence has occasioned more controversy and comment than *Rylands v. Fletcher*." [3 Okla.L.Rev. at 30].

In *Rylands*, a mill owner ordered construction of a dam *to get water power*. The resulting reservoir lay over ancient abandoned coal mines. The mill owner had no reason to suspect that these old diggings led into an operating colliery, but they did. When the dam was closed, water ran down the old shafts, seeping into and flooding the colliery. *The mill owner obtained the water for his own use* without drainage facilities. The mill owner's use was classified as a "non-natural user."

From the above authorities, the following rules control liability without fault in the

disposition of disputes concerning collection and discharge of surface water upon the land of an adjacent owner.

■ (1) Under the common law, a person *who for his own purposes* brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it at its peril, and if he does not do so is prima facie answerable for all the damage which is the natural consequence of its escape.

(2) This principle applies only to a "non-natural user" of the land as distinguished from any purpose for which it might in the ordinary course of the enjoyment of land be used. If a "natural" use of the property is made at the time of the escape with resulting damage, ordinary care becomes the standard by which he is judged.

■ (3) *Rylands* did not define "non-natural user." The meaning of this term still remains in a state of uncertainty. It probably did not mean "artificial user" such as defendants who had constructed retention dams *and drainage facilities* and did not collect water for its own use. Perhaps *Rylands* intended to distinguish between traditional use and novel use. It has also been said that *regardless of what Rylands* meant to say, "non-natural" means an extraordinary or uncommon use which creates a one-sided risk, or abnormally dangerous situation. A "non-natural user" is determined by the character of the thing or activity in question and the place and manner in which it is maintained and its relationship to its surroundings. *In order to* subject a landowner to strict liability, he must be using his property in an unusual, exceptional, abnormal or extraordinary way. It does not apply to the usual and normal. The trial court is required to determine whether a particular structure or method of operation is natural or unnatural.

(4) Negligence is clearly irrelevant to the doctrine. Carrying on the activity itself where injury results is negligence per se and nothing defendant can prove will absolve him unless he comes within one of the exceptions to the rule. In this sense, strict liability is absolute liability for negligence even though the best precautions are taken.

■ (5) The defendant can excuse himself by showing:

(a) The escape was owing to plaintiff's default.

(b) The escape was due to an act of God.

(c) The escape was due to the act of a stranger.

(d) The escape of things which were naturally present on the premises and which were not artificially dealt with by the defendant.

(e) The escape of things brought or kept upon the premises not solely for the defendant's purposes, but also for the benefit of the person injured.

(f) The defendant is authorized by statute to bring or keep the dangerous thing on the premises.

*Thigpen v. Skousen & Hise*, 64 N.M. 290, 327 P.2d 802 (1958) approved *Rylands* in name as the case launching the old doctrine, *sic utere tuo ut alienum non laedas* (use your own property in such a manner as not to injure that of another). Prosser, Selected Topics on the Law of Torts, p. 152, says that Colorado approved *Rylands* by holding its statute to follow the common law in *Sylvester v. Jerome*, 19 Colo. 128, 34 P. 760 (1893). *Sylvester* was confirmed in *Oxtoby* and *Wheatland*, and other jurisdictions which adopted *Rylands*. *Brown v. Gessler*, 191 Or. 503, 230 P.2d 541, 23 A.L.R.2d 815 (1951) interpreted *Oxtoby*. The court said:

The doctrine of liability without fault was applied. However, a "borrow pit" is a more or less permanent excavation and, in effect, a reservoir, *though not such for any use or purpose of the owner.* * * *

*. * * * * *

That Colorado case was one in which the retaining of the water in the "borrow pit" involved an extraordinary and unusual danger to the adjoining landowner. Moreover, the case could just as well have proceeded and been decided upon the theory of negligence, *in that there was a plain duty on the part of the owner to*

*artificially drain the pit* or take other proper steps, so that damage would not be caused his neighbor. [Emphasis added.] [230 P.2d at 546.]

By approving *Oxtoby, Groff* brought *Rylands* into New Mexico. *Little* did not. It is important to note that in *Little*, liability without fault was not applied. Defendant was held liable for negligent acts under circumstances approximating the facts in the instant case.

The distinction between *Groff-Rylands* and *Little-Rio Rancho Estates* may be stated as follows:

■ A landowner, who collects surface water for his own use or in a reservoir without drainage facilities, and the water seeps by percolation or is cast onto the land of an adjacent owner to his damage, is then subject to liability without fault. However, a landowner who constructs retention dams and drainage facilities in an artificial channel, and the discharge of the water damages the land of an adjacent landowner, liability without fault cannot be applied. Liability rests upon the negligence of the landowner in the creation, maintenance and discharge of water by way of drainage facilities.

The solution to this problem does not end here.

B. *New Mexico adopted Restatement, Torts, §§ 519 and 520.*

In *Thigpen, supra,* New Mexico adopted the rule of liability without fault for "ultrahazardous activities" stated in Restatement, Torts, §§ 519 and 520 (1938) at 41–47. This was confirmed in *First Nat. Bk., Albuquerque v. Nor-Am Agr. Prod., Inc.,* 88 N.M. 74, 537 P.2d 682 (Ct.App. 1975). Sections 519 and 520 accepted the principle of *Rylands,* but limited it to an "ultrahazardous activity" of defendant. Prosser, Law of Torts, p. 512.

Section 520, however, includes this caveat:

The Institute expresses no opinion as to whether the construction and use of a large tank or artificial reservoir in which a large body of water or other fluid is collected is or is not an ultrahazardous activity.

■ It is impossible to bring *Rylands* within the class of ultrahazardous employments. Ultrahazardous employments are classified as blasting, *Thigpen, supra*; explosives stored in an inappropriate place where it is maintained in light of the character of that place and its surroundings, *Otero v. Burgess,* 84 N.M. 575, 505 P.2d 1251 (Ct.App. 1973). *Rylands* does not include within its elements any requirement that there be any perceptible risk of harm to plaintiff from defendant engaging in the activities carried on.

To resolve judicial problems that may arise with reference to "ultrahazardous activity" and the non-expression of opinion in the caveat, the American Law Institute tentatively adopted Draft No. 10 in 1964 which recommended changes for §§ 519 and 520. In Restatement, Torts 2d, Note 2 of § 520, p. 57, the reporter stated:

"Ultrahazardous," as it is defined in the old Section, is misleading. There is probably no activity whatsoever, unless it be the use of atomic energy, which is not perfectly safe if the *utmost* care is used— which would of course include the choice of an absolutely safe place to carry it on . . . . [Emphasis added.]

As a result, the phrase "abnormally dangerous activity" was substituted for "ultrahazardous activity." Sections 519 and 520 (1977) which contained the caveat now read:

§ 519. *General Principle*

(1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

(2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

§ 520. *Abnormally Dangerous Activities*

In determining whether an activity is abnormally dangerous, the following factors are to be considered:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;

(b) likelihood that the harm that results from it will be great;

(c) inability to eliminate the risk by the exercise of reasonable care;

(d) extent to which the activity is not a matter of common usage;

(e) inappropriateness of the activity to the place where it is carried on; and

(f) extent to which its value to the community is outweighed by its dangerous attributes.

Section 520, as amended, has been adopted where relevant to the issue raised. *Cities Service Company, supra; Clark-Aiken Co., supra; Yommer v. McKenzie*, 255 Md. 220, 257 A.2d 138 (Ct.App. 1969). Unfortunately, *Groff, supra*, did not consider these limitations of the *Rylands* doctrine.

■ We agree. We hold that defendants, whose surface water was controlled by drainage facilities, may be liable for negligence and were not subject to liability without fault.

Reversed. Defendants are granted a new trial.

IT IS SO ORDERED.

LOPEZ, J., concurring in result only.

ANDREWS, J., dissenting.

ANDREWS, Judge (dissenting).

I respectfully dissent.

In 1938, the New Mexico Supreme Court indicated its approval of the generally recognized rule that a landowner cannot collect surface water into an artificial channel or change its volume or precipitate it in greatly increased or unnatural quantities upon his neighbor, to the substantial injury of the latter. *Rix v. Town of Alamogordo*, 42 N.M. 325, 77 P.2d 765 (1938). Since that date, this rule has been applied by the Supreme Court and the Court of Appeals a number of times, *Little v. Price*, 74 N.M. 626, 397 P.2d 15 (1964); *Martinez v. Cook*, 56 N.M. 343, 244 P.2d 134 (1952); *Groff v. Circle K. Corporation*, 86 N.M. 531, 525 P.2d

891 (Ct.App. 1974), but an analysis of the discussion in each of the opinions demonstrates some reliance during the proceedings on various theories of negligence.

Much of the confusion in this area of the law is caused by a failure to ascertain whether water doctrine arises under property or tort law. It has generally been assumed that the rules relative to surface waters are a branch of property law, and the legal relationships of the parties have usually been stated in terms of property concepts. *Keys v. Romley*, 64 Cal.2d 396, 50 Cal.Rptr. 273, 412 P.2d 529 (1966).

This classification undoubtedly results from the fact that most controversies over private waters arise between adjoining landowners and nearly always involve invasions of interests in land rather than interests in personalty or chattels. 50 Cal.Rptr. at 280, 412 P.2d at 536.

Yet, clearly an unjustified invasion of a possessor's interest in the use and enjoyment of his land through the medium of surface waters, or any other type of waters, is as much a tort as a trespass or private nuisance. *Keys v. Romley, supra.*

However, the potential for confusion in New Mexico is alleviated in *Martinez Cook, supra*, where the court makes clear that the rule in this state is the civil-law rule as it applies to surface waters.

Particularly, we have never followed it [common law] in connection with our waters, but, on the contrary, have followed the Mexican or civil law, and what is called the Colorado doctrine or prior appropriation and beneficial use. 56 N.M. at 349, 244 P.2d at 138.

A statement as to the nature of the civil-law rule is found in "Waters", 78 Am. Jur.2d, § 121:

Diametrically opposed to the common-enemy doctrine is the civil-law rule under which the owner of the upper or dominant estate has a legal and natural easement or servitude in the lower or servient estate for the drainage of surface water, flowing in its natural course and manner; and such natural flow or passage of the

90

waters cannot be interrupted or prevented by the servient owner to the detriment or injury of the estate of the dominant proprietor, unless the right to do so has been acquired by contract, grant, or prescription. The rule finds its justification in the feeling that those purchasing or otherwise acquiring land should expect and be required to accept it subject to the burdens of natural drainage, and has been supported by an appeal to the maxim "aqua currit et debet currere, ut currere solebat," water being "descendible" by nature. *On the other hand, the upper owner can do nothing to change the natural system of drainage so as to increase the natural burden.* In some jurisdictions, the civil-law rule is held applicable to rural, and inapplicable to urban, property. (Emphasis added.)

Certainly, this rule is harsh and should be modified to allow for reasonableness of conduct, a question of fact to be determined in each case upon consideration of all the relevant circumstances. Application of such a test requires that courts analyze "prerequisites of liability", *Keys v. Romley, supra*, 50 Cal.Rptr. 273, 412 P.2d at 563, and thereby accept tort as the basis for this type of case. New Mexico courts have not yet changed the rule, and to do so now unfairly affects these parties, assuming that if reliance upon existing law motivated the conduct of the parties, they were guided by the civil-law rule. See *Keys v. Romley, supra.*

The law in New Mexico is clear. An upper owner can do nothing to change the natural system of drainage so as to increase the natural burden. Submission of the instruction on strict liability was not error. The decision of the trial judge should be affirmed.