620 P.2d 1300

Charles LIGOCKY, Plaintiff–Appellee,

v.

Ted WILCOX, Defendant–Appellee, Cross Appellant,

v.

Herbert STEWART, d/b/a Herb's Flying Service, Defendant–Appellant,

v.

JAMES MARCAK, SONO, INC., a Texas Corporation and Kalo Laboratories, Inc., a Missouri Corporation, Defendants–Cross Appellees.

No. 4442.

Court of Appeals of New Mexico.

Nov. 6, 1980.

Larry Ramirez, Crouch, Valentine & Ramirez, Las Cruces, for defendant–appellant Stewart.

William L. Lutz, Martin, Martin, Lutz & Cresswell, Las Cruces, Gary Jeffreys, P.C., Deming, for defendant–appellee, cross appellant Wilcox.

Roy G. Hill, Smalley & Hill, Deming, for plaintiff–appellee.

C. Barry Crutchfield, Templeman & Crutchfield, Lovington, for defendants–cross appellees Marcak & Sono, Inc.

OPINION

WOOD, Chief Judge.

The herbicide, Defy, containing 2–4D, was applied to a milo field to kill weeds. Some adjacent cotton plants were damaged. The appeal involves: (1) liability of the supplier to the owner of the cotton on a theory of express warranty, and (2) liability of the person aerially applying the Defy to the owner of the cotton on a theory of strict liability.

Ligocky sued all the named defendants claiming his cotton had been damaged by the aerial application of Defy. His claims

against Wilcox and Stewart were settled; the record does not show a disposition of Ligocky's claims against the other defendants. Ligocky's claims, however, are not involved in this appeal.

Wilcox, the owner of milo and cotton fields, cross–claimed against Sono, who sold the Defy to Wilcox, Marcak, a salesman for Sono, and Kalo Laboratories, Inc., who manufactured Defy. Kalo was never served and is not a party. Wilcox also cross–claimed against Stewart who was employed by Wilcox to aerially apply the Defy. The issues on appeal involve the disposition of these cross–claims.

### Express Warranty

Wilcox cross–claimed against Sono and Marcak on a theory of an express warranty that had been breached. The alleged warranty, stated in Wilcox' requested findings, was "that Defy would not drift or volatize and that it could be aerially applied on the milo and would not damage the adjoining cotton." The trial court's finding as to the warranty was "when properly applied it [Defy] would not volatize and drift onto adjoining crops." The trial court found a warranty less extensive than the warranty claimed by Wilcox.

Wilcox claims the trial court erred in concluding that Sono and Marcak were not liable. Wilcox asserts that where a chemical drifts onto adjoining fields, the sellers are liable when they warrant the chemical will not drift onto the adjoining field. Wilcox' argument does not challenge the trial court's findings, but the conclusion of non–liability based on the findings made. This contention is based on a misunderstanding of the trial court's findings.

The trial court did not find a warranty that Defy would not drift; rather, it found that Defy would not volatize and drift when properly applied. The findings distinguish between drifting as a result of air movement and drifting as a result of volatilization:

10. During the application of the Defy by Stewart it was drifted by air movements onto the adjoining cotton fields of Wilcox damaging same.

11. There was no substantial evidence that the Defy as applied to the milo crop volatized and the vapor drifted onto the cotton causing the damage involved.

■ Inasmuch as the warranty was that Defy would not volatize and drift, and inasmuch as the trial court's finding was that the drifting resulted from air movements rather than from volatilization, the trial court's conclusion was proper on the basis of unchallenged findings.

### Strict Liability

Wilcox purchased the Defy from Sono and Marcak, and employed Stewart to aerially apply the Defy to the milo field. One of Wilcox' theories of liability against Stewart, stated in Wilcox' requested findings, was that Stewart knew that Defy contained 2–4D and knew that 2–4D was intrinsically and inherently dangerous. On this basis, Wilcox claimed that Stewart was liable for the damage to Wilcox' cotton caused by 2–4D. Apparently the trial court understood this to be a claim of strict liability because:

(a) it found "2–4 D is intrinsically and inherently dangerous to cotton crops, and the 2–4 D as contained in the Defy was the only application of such chemical made in the area of the Wilcox farm on or about that time"; and

(b) it concluded "Stewart is strictly liable to Wilcox for the aerial drift of Defy on application causing damage to his cotton crop."

A conclusion of strict liability does not follow from the finding that 2–4D in the Defy was intrinsically and inherently dangerous.

■ Strict liability in New Mexico, which is based on Restatement of Torts, Second § 402A (1965), is applied to suppliers–such as manufacturers, retailers and lessors. *Stang v. Hertz Corporation*, 83 N.M. 730, 497 P.2d 732, 52 A.L.R.3d 112 (1972). Stewart was not a supplier. Sono and Marcak supplied Defy to Wilcox who, in turn, supplied Defy to Stewart for aerial application. Inasmuch as this type of strict liability does

not apply to Stewart, we do not reach the question of whether the Defy, as supplied, could be considered defective, or whether Wilcox could recover from Stewart, on any theory of strict liability, when Wilcox furnished the Defy to Stewart. Compare *Chevron Oil Company v. Sutton*, 85 N.M. 679, 515 P.2d 1283 (1973); *Lay v. Vip's Big Boy Restaurant, Inc.*, 89 N.M. 155, 548 P.2d 117 (Ct.App.1976); *Hines v. St. Joseph's Hospital*, 86 N.M. 763, 527 P.2d 1075 (Ct. App.1974).

The trial court was not requested to, and did not find, that Defy was abnormally dangerous or unreasonably dangerous, thus this theory of strict liability is not applicable. See *Gutierrez v. Rio Rancho Estates, Inc.*, 93 N.M. 755, 605 P.2d 1154 (1980); compare *Rudisaile v. Hawk Aviation, Inc.*, 92 N.M. 575, 592 P.2d 175 (1979). Rather, the trial court found Defy was inherently and intrinsically dangerous to cotton crops. This finding confuses two statements in *Pendergrass v. Lovelace*, 57 N.M. 661, 262 P.2d 231 (1953). The statements are: 1. A 2–4D solution is "highly dangerous to cotton plants"; and 2. "[w]ork that is intrinsically and inherently dangerous in performance is not delegable . . . ."

In *Pendergrass* the defendant had 2–4D applied aerially. A neighbor's cotton was damaged. The defendant was held liable to the neighbor for the negligent application of 2–4D by the operator of the plane, because defendant had full responsibility for the aerial spraying. Full responsibility was imposed because the work of aerially spraying 2–4D was intrinsically and inherently dangerous, and responsibility in those circumstances could not be shifted to the operator of the plane. *Pendergrass* would have been applicable to Ligocky's claim against Wilcox; it did not decide the different fact situation of this case which involves Wilcox' claim against the person he employed to aerially apply Defy.

Stewart applied Defy aerially to Wilcox' milo field. When he did so he knew the application of 2–4D to cotton was dangerous. During the spraying, the Defy drifted "by air movements" onto Wilcox' adjoining cotton fields. The work was inherently and intrinsically dangerous. *Pendergrass*, supra. The nature of the work may be considered in determining whether Stewart was negligent in applying Defy. See U.J.I. Civil 12.2, which explains: "As the danger that should reasonably be foreseen increases, so the amount of care required also increases." There is evidence that Wilcox knew the Defy contained 2–4D and knew of the warranty made by Sono and Marcak when he employed Stewart to apply Defy. In determining whether Stewart may be liable for any negligence on his part, the question of Wilcox' possible contributory negligence (by assumption of risk, *Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1972)) must also be considered.

Wilcox contends that under the trial court's findings, we should hold that Stewart was negligent; Stewart, in turn, claims that under the same findings we should hold that Wilcox was contributorially negligent. Our answer is that these rulings are to be made by the trial court. These issues were presented to, but not decided by, the trial court because of its erroneous strict liability ruling.

The judgment in favor of Sono and Marcak on Wilcox's warranty claim is affirmed. The judgment in favor of Wilcox and against Stewart, on a theory of strict liability, is reversed. The cause is remanded to the trial court to decide, as between Wilcox and Stewart, the claims of negligence and contributory negligence.

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., concurring in part and dissenting in part.

SUTIN, Judge (concurring in part and dissenting in part).

I concur in the affirmance of the judgment in favor of cross–defendants Marcak and Sono, Inc., and dissent from a reversal of the judgment in favor of cross–plaintiff Wilcox.

The trial court found that:

Wilcox had a crop of milo infested with weeds, and also had cotton growing in adjacent fields. He contacted Stewart to have aerial application of Formula 40 containing 2–4D. Stewart declined because of the danger of damaging other crops with 2–4D, a product that is intrinsically and inherently dangerous to cotton crops. Stewart suggested that Wilcox contact Marcak, local sales agent for Sono, for a product known as Defy, a product that contained 2–4D also.

Marcak represented and advertised that when properly applied Defy would not volatize and drift onto adjoining crops. In reliance thereon, Wilcox purchased Defy and contracted with Stewart to aerially apply it to the milo crop. During aerial application by Stewart, Defy did not volatize and drift. It drifted by air movements onto the adjoining cotton fields of Wilcox and damaged them.

The court concluded:

1. Stewart is strictly liable to Wilcox for the aerial drift of Defy on application causing damage to his cotton crop.

The trial court held that a field sprayer who sprays a milo area of a landowner with an intrinsically and inherently dangerous product such as 2–4D must pay damages caused if the product is carried by air movements onto the cotton crop of the landowner.

This *rule* is based upon Restatement (Second) Torts §§ 519 and 520 (1977).

In *Thigpen v. Skousen & Hise*, 64 N.M. 290, 327 P.2d 802 (1958), New Mexico adopted the rule of liability without fault for "ultrahazardous activities" stated in Restatement Torts, §§ 519 and 520 (1938) at 41–47. The Institute believed that "ultrahazardous" was misleading and substituted therefor, "abnormally dangerous." The present reading of §§ 519 and 520 are set forth in *Gutierrez v. Rio Rancho Estates, Inc.*, 94 N.M. 84, 607 P.2d 622 (Ct.App.1979), and *aff'd*, 93 N.M. 755, 605 P.2d 1154 (1980) on the ground that an instruction on strict liability was reversible error where discharged waters resulted in periodic flooding and silting on an adjacent landowner's

property. Sections 519 and 520 are also set forth in *Rodgers v. City of Loving*, 91 N.M. 306, 573 P.2d 240 (Ct.App.1977), Sutin, J., specially concurring and dissenting, a case which involved burning dead leaves and grass on adjoining property.

Generally speaking, New Mexico has adopted the rules and philosophical concepts expressed in the Restatement of the Law. I think we should do so in this case. Annot. *Liability For Injury Caused By Spraying Or Dusting Of Crops*, 37 A.L.R.3d 833 (1971) contains a survey of cases on this subject matter. After a review of this annotation, the Supreme Court of Washington adopted the strict liability doctrine of the Restatement as the rule of law. *Langan v. Valicopters, Inc.*, 88 Wash.2d 855, 567 P.2d 218 (1977). After deciding that the court shall determine whether an activity is abnormally dangerous as a matter of law, *Langan* held that strict liability is imposed for damage proximately caused by aerial crop dusting based upon a balancing of conflicting social interests. The court said:

There is no doubt that pesticides are socially valuable in the control of insects, weeds and other pests. They may benefit society by increasing production. Whether strict liability or negligence principles should be applied amounts to a balancing of conflicting social interest–the risk of harm versus the utility of the activity. In balancing these interests, we must ask who should bear the loss caused by the pesticides.... [Id. 567 P.2d 223.]

After reciting the circumstances, the court said:

... Under these circumstances, there can be an equitable balancing of social interests only if appellants [Valicopters] are made to pay for the consequences of their acts.

The *Langan* rule is, of course, an advance made in the development of the law of crop dusting. For a review thereof *see* Kennedy, *Liability In The Aerial Application Of Pesticides*, 22 So.Dak.L.Rev. 75 (1977); *Crop–Dusting: Two Theories of Liability?*, 19 Hastings L.J. 476 (1968); *Crop–Dusting;*

*Legal Problems In A New Industry*, 6 Stan. L.Rev. 69 (1953); Chapman, *Crop Dusting— Scope Of Liability And A Need for Reform In The Texas Law*, 40 Tex.L.Rev. 527 (1962).

We are confronted, however, with a case in which the cotton crop of Wilcox, who hired the field sprayer, an independent contractor, was damaged, not the cotton crop of a third person. *Pendergrass v. Lovelace*, 57 N.M. 661, 262 P.2d 231 (1953) holds that a landowner is liable for the negligence of a field sprayer if the work is intrinsically and inherently dangerous in performance. In other words, the independent contractor 'is transformed into a servant or employee of the landowner. "An employee is liable in damages to his employer for his negligence or wrongful act resulting in loss to the employer." 56 C.J.S. *Master and Servant* § 79 (1948); 53 Am.Jur.2d, *Master & Servant*, § 108 (1970). The doctrine of strict liability would apply where the work is inherently and intrinsically dangerous.

Under the strict liability rule, negligence of a field sprayer is irrelevant, and contributory negligence of an employer is not a defense, unless the employer intentionally and unreasonably subjected himself to a risk of harm from the abnormally dangerous activity, of which he knew. Restatement (Second) Torts, § 524.

Stewart requested the court to find that Wilcox purchased Defy to control broadleaf plants in his milo; that he knew Defy contained a substance highly dangerous to broadleaf plants of his cotton crop and knew that Defy could cause harm to his cotton crop. Stewart requested the court to conclude that Wilcox was contributorially negligent in the form of assumption of risk. The court failed to adopt any of these requested findings. This is equivalent to a contrary finding by the court.

In reality, the doctrine of strict liability shifts the burden to the field sprayer to prove non–liability. The field sprayer is an "expert" in the field of crop dusting. The burden belongs on him.